**LUMBERMEN'S MUTUAL CASUALTY INSURANCE COMPANY, Appellant,**

v.

**Wayne RANDLE, Appellee.**

No. 22726.

United States Court of Appeals
Fifth Circuit.

Dec. 22, 1966.

Rehearing Denied Jan. 24, 1967.

James E. Price, Corinth, Miss., Stovall
& Price, Corinth, Miss., of counsel, for
appellant.

Orma R. Smith, Jr., Corinth, Miss.,
for Wayne Randle, appellee.  Armstrong,

McCadden, Allen, Braden & Goodman,
Memphis, Tenn., Smith & Smith,
Corinth, Miss., of counsel.

Before RIVES, GEWIN and GOD-
BOLD, Circuit Judges.

GEWIN, Circuit Judge:

The appellee, Randle, brought this di-
versity suit against one Robert Owens
in the United States District Court for
the Northern District of Mississippi for
personal injuries sustained in an auto-
mobile accident involving a car driven
by Owens.  Randle obtained a default
judgment of $13,500 against Owens.
Upon suggestion filed by Randle, the dis-
trict court issued the writ of garnish-
ment here involved against Lumbermen's
Mutual Insurance Company, Inc. as in-
surer of Robert Owens.  The court found
that the automobile was engaged in a
use which was covered by the policy and
rendered judgment for Randle in the
amount of $5,000, the full amount of the
policy.  The insurance company appeals
from that judgment.

In July 1961, the appellant issued a
garage liability policy to Robert Owens
who then was a member of a partnership
which operated a used automobile sales
agency on U. S. Highway No. 45 in
Corinth, Mississippi.  The policy pro-
tected Owens against the risk of liability
arising out of the ownership, mainte-
nance or use of the premises for an
automobile sales agency, and the use of
automobiles in connection therewith.[1]
A week prior to the accident here in
question Owens sold his interest in the
business to one Hugh Jones. Owens re-
mained with the business as a salesman
and was paid a salary and a commission.
He testified somewhat equivocally that
he had the right to sell cars from the lot

1. The applicable provisions of the policy
   are as follows:
   Definitions of Hazards
   " * * * The ownership, management
   or use of the premises for the purpose
   of an automobile sales agency, repair
   shop, service station, storage garage or
   public parking place, and all operations
   necessary or incidental thereto; and the
   ownership, maintenance or use of any

   automobile in connection with the above
   defined operations, * * *"
   The policy defines the word "premises" as
   follows:
   "The unqualified word 'premises' means
   premises operated by the named insured
   for the purposes insured hereunder, and
   includes the ways immediately adjoin-
   ing."

on his own account but that he never exercised the right.

The evening before the accident, Owens and one John Putt went to Sheffield, Alabama, according to Owens' testimony, to obtain a trailer[2] for a prospective purchaser, Kent Fell. The trailer dealer was closed by the time they arrived in Sheffield, and no further efforts were expended during the evening in that regard. On their way to Sheffield the two men stopped in Iuka, Mississippi, where, according to pre-arranged plans, they met two women, not their wives. Owens and Putt spent a substantial portion of the evening with the women drinking beer and driving in the Iuka area. Around midnight their automobile became stuck in the backwaters of Pickwick Lake, just off U. S. Highway No. 72. At this point in their trip, Owens and Putt separated. Putt went back to Corinth,[3] while Owens remained in the Iuka area.

Owens had the car towed out of the backwaters of the lake and then spent the remainder of the night at a local service station which was open all night. Owens testified that early on the morning of August 8th he left that station to go to another service station owned by E. B. Fell (Big'un Fell) on U. S. Highway No. 25 in Iuka in order to discuss with Kent Fell the sale of a trailer. Kent, the son of Big'un Fell, was employed at the station but he was not there when Owens arrived. Big'un testified that while Owens was at the Fell station, he (Owens) mentioned his desire to sell a trailer to Kent.[4] Owens and Kent had discussed the trailer prior to the day of the accident. Owens left the Fell service station at about 6:30 A.M. Big'un was working on a car at the time and he could

not say where Owens was going or in which direction he went. The accident occurred about a half-hour later on U. S. Highway No. 72 East.

The appellant argues that Owens was not operating an automobile sales agency at the time of the accident and that the automobile in which he was traveling at the time of the accident was not owned, maintained or used in connection with such sales agency. Therefore, appellant contends that it is not liable under the policy. After a careful review of the record, we agree with the contention that Owens was not operating an automobile sales agency and reverse the judgment of the district court.

The evidence relating to whether Owens maintained or used the premises for the purpose of an automobile sales agency was given largely by Owens. That portion of his testimony is uncontradicted. He testified that he had the right to sell his own cars from the lot, and that he was to receive any profit gained or suffer any loss incurred. He was unable to testify that there was a formal arrangement to that effect, nor could he say definitely how many cars, if any, he personally had for sale, or whether they were on the lot. He did testify that his son was using a 1951 Chevrolet at the time. In fact, no business was transacted with respect to any automobile he owned on the lot during the week between the sale of the business and the accident. However, he and John Putt sold a trailer to Owens' niece during that period, and Owens received a commission from Putt on the sale. Owens also testified that he was attempting to sell a trailer to Kent Fell during the period immediately preceding the accident, and that he had gone to Iuka to

---

2. On oral argument both parties agreed that used car dealers in the Corinth, Mississippi area frequently handled trailers as well as used automobiles. No differentiation was made by the parties in the activity of Owens with respect to trailers as disinguished from automobiles as related to insurance coverage.

3. How Putt returned to Corinth depends on whose testimony is believed. Putt

stated that one of the women drove him back, while Owens testified that Putt hitchhiked.

4. Owens sustained a concussion in the accident, and as a result he remembers nothing after leaving the all night station to go to Big'un Fell's station. He stated that he did remember that he was going to Fell's station to discuss the trailer with Kent.

pursue the sale. This testimony was corroborated to some extent by Big'un Fell.

The district court found that Owens retained the right to deal at that same lot on his own account in addition to working there as a salesman. Notwithstanding such finding, we do not agree that the claimed right of Owens to sell his own automobiles in the circumstances and under the facts disclosed by the record constituted the ownership, management or use of an automobile sales agency within the meaning of the policy. Nor do we believe that any business venture in which Putt and Owens were jointly engaged resulted in coverage.

With respect to the question whether Owens was operating an automobile sales agency, the district court made the following factual finding:

"After the sale of his business about a week before the accident,—I believe around August the 17th—the only evidence in this record is that Owens retained the right to deal at that same lot on his own account in addition to working there as a salesman. The record does not show that he exercised this right. In fact, his testimony is that he did not. But, nevertheless, under these circumstances, I must find that the policy at that time and at the time of the accident giving rise to the judgment with which we're concerned now, the coverage afforded by the policy in question, was in full force and effect."

In view of our conclusion and for the reasons hereinafter stated, we find it unnecessary to decide whether the foregoing findings of fact are clearly erroneous under the standard set forth in F.R.Civ.P. 52(a). Even if we accept such finding as being supported by the evidence, we conclude as a matter of law, under the facts and in the circumstances here present, that the right of Owens to sell automobiles on his own account does not constitute the ownership, management or use of the premises for the purpose of conducting or operating an automobile sales agency within the meaning of the policy.

Although our decision does not turn on a factual determination, the appellant makes a very strong argument in support of its contention that the damages here caused did not arise out of the ownership, maintenance or use of the premises designated in the policy as an automobile sales agency by Owens. Owens was thoroughly interrogated with respect to his right to sell cars and whether he retained such right of sale at the time he sold the business to Hugh Jones. He never did testify that he *retained* the right to sell his personal automobiles at the time he sold the business. At most he stated that under the terms of his *employment* he would have been *entitled to sell* his own personal cars from the lot.[5]

The policy contains no definition of an automobile sales agency; the parties have not cited us to any case directly in point, and we have been unable to find one. The appellant does urge consideration of the rationale of Cherot v. United States Fidelity & Guar. Co., Inc., 264 F.2d 767, 7 A.L.R.2d 959 (10 Cir. 1959) where the court construed the meaning of the term "automobile business" as used in an automobile liability policy. The policy in that case precluded recovery for personal injuries resulting from an accident if the automobile involved was being used in connection with

---

5. The following is from his testimony:
    "Q. Under your agreement, then, with them did you have a right to sell your personal cars that you owned yourself off that lot?
    "A. I don't know where [sic] we had an agreement or not.
    "Q. Well, under your terms of employment, would you or would you not have been entitled to sell your personal cars off that lot?
    "A. If I had wanted to.
    "Q. If you had made any profit, who would have got the profit?
    "A. I would.
    "Q. If you had suffered a loss, who would have taken the loss?
    "A. I would."

an automobile business. At the time of the accident the automobile was being driven by a friend of the insured who was doing some repair work on it. The driver repaired his friend's automobiles as a hobby. He worked out of his home garage, charging only for parts and a nominal sum for labor or electricity. In *Cherot* the driver and the insured were both working on the car. The court held that the driver was not engaged in an automobile business within the meaning of the policy. It construed the term, which was in an exclusionary clause of the policy, in its usual connotation to mean an undertaking engaged in with some regularity, for profit and income. 264 F.2d at 769. The cases which have defined the word "business" in a similar manner are legion. See, e. g., United States v. Hercules Mining Co., 119 F.2d 288 (9 Cir. 1941); Employers' Liab. Assur. Corp. v. Accident & Cas. Ins. Corp., 134 F.2d 566, 146 A.L.R. 1186 (6 Cir. 1943); Glisson v. State Farm Mutual Automobile Ins. Co., 142 S.E.2d 447 (S.C.1965) and the cases therein cited.

■ There are obvious factual distinctions between the *Cherot* case and the cases therein cited and the facts we must consider, but we think the principles applied in those opinions are applicable here. When the language is ambiguous, insurance policies are to be construed in a manner most favorable to the insured, Cherot v. United States Fidelity & Guar. Ins. Co., supra: New York Life Ins. Co. v. Blaylock, 144 Miss. 541, 110 So. 432 (1926), but they are also to be interpreted in light of the circumstances in which they were issued and with due deference to common usage and understanding. Ordinarily an automobile sales agency is considered a business establishment located at a certain location, with a number of cars available for sale, and which often supplies various services connected with the sale of automobiles.

Such services usually include making financial arrangements, obtaining insurance and sometimes providing repair and maintenance facilities. When the policy was issued, Owens was actively engaged in such a business venture. The policy was issued to afford Owens insurance, coverage for the business operated on the lot described in the policy. It clearly contemplated that coverage would be afforded as long as he was engaged in such business activity. As used in the policy under consideration an automobile sales agency was intended to refer to a regular business undertaking which received the time and attention of its owner and operator, or the time and attention of employees designated by him for such purposes, in the conduct of such agency at an established location. When the insurance was originally procured the agency was evidently the major source of Owens' income and the undertaking upon which he relied for a substantial portion of his livelihood. He was well known in the local community as a used car dealer and had been in the business of selling used automobiles for twenty years.

■ At the time of the accident Owens had sold this business, and was employed on the lot as a salesman. His primary obligation was towards his employer, and his right to deal on his own account must be construed with that obligation in mind. He clearly could not act in a manner grossly adverse to the interests of his employer.[6] At best, therefore, the right to sell cars in which he was personally interested envisioned an infrequent sale of a car or trailer. In providing coverage for the operation of an automobile sales agency, the policy clearly contemplated a more businesslike venture than the right to sell a car for himself or his family on those rare occasions when the opportunity presented

6. It would be somewhat anomalous to hold that Owens operated a sales agency from the lot, after he had sold the sales agency on the lot. However, this considera- tion is not controlling since what constitutes an agency under the policy is not necessarily limited to the exact agency which existed when the policy was issued.

itself. Cf., Stone v. M. L. Virden Lumber Co., 205 Miss. 841, 39 So.2d 498 (1949); Board of Sup'rs of Amherst Co. v. Boaz, 176 Va. 126, 10 S.E.2d 498 (1940); Roseland v. Phister Mfg. Co., 125 F.2d 417, 139 A.L.R. 1013 (6 Cir. 1942).

█ Even the sale of the trailer to Owens' niece, or the attempted sale of the trailer to Kent Fell do not indicate that Owens was operating a sales agency from the premises described in the policy. Neither of these sales was in any way connected with the sales agency or the premises on which it was located. The trailer sold to Owens' niece was obtained by John Putt from a dealer in Tennessee, and the trailer Owens was attempting to sell to Kent Fell was not on the sales agency lot or even in his possession. Owens had intended to obtain the trailer from a dealer in Sheffield, Alabama. These transactions had no relation to the sales agency in Corinth or the premises on which the agency was located and operated; they are merely independent business ventures in which Owens and Putt were jointly engaged. Lacking the necessary connection with the sales agency and the described premises on which the agency was operated as required by the policy, such isolated transactions do not support the contention that the appellant is liable under the policy. 7 Appleman, Insurance Law & Practice, Sec. 4451 (1962), citing Lavine v. Indemnity Ins. Co., 260 N.Y. 399, 183 N.E. 897; Cf. Hardware Mut. Cas. Co. v. Wendlinger, 146 F.2d 984 (4 Cir. 1944).

In view of our disposition of appellant's first contention, we do not reach its two other specifications of error, (a) that there was no evidence to show that the automobile involved in the accident was being used in connection with the operation of an automobile sales agency at the time of the accident; and (b) that Owens breached the cooperation clause of the policy so as to render the policy unenforceable.

The judgment is reversed.