**RED PANTHER CHEMICAL COMPANY, a corporation, Plaintiff–Appellant,**

v.

**INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a corporation, Defendant–Appellee.**

**No. 93–6400.**

United States Court of Appeals, Tenth Circuit.

Dec. 19, 1994.

---

Glen Mullins, Oklahoma City, OK, for plaintiff-appellant.

Tom L. King (Linda P. Brown with him, on the briefs), King, Roberts & Beeler, Oklahoma City, OK, for defendant-appellee.

Before MOORE and KELLY, Circuit Judges, and KANE, District Judge.*

JOHN P. MOORE, Circuit Judge.

Red Panther Chemical Company appeals the district court's grant of summary judgment in favor of the Insurance Company of Pennsylvania. We conclude judgment was improvidently granted and reverse.

---

* The Honorable John L. Kane, Jr., Senior United States District Court Judge for the District of Colorado, sitting by designation.

Red Panther held a corporate general liability policy from which this litigation emanates with the Insurance Company. The controversy arose when the Insurance Company refused to defend Red Panther in an Oklahoma state court case alleging claims of negligence, strict liability, and products liability brought against Red Panther by Dennis Graham. Red Panther filed this action seeking a defense and indemnification for Mr. Graham's claim. Applying Mississippi law, the district court held the Total Pollution Exclusion clause of Red Panther's insurance policy was plain and unambiguous.[1] The clause specifically excluded insurance coverage for bodily injury and property damage claims arising from the escape of pollutants. The district court held this case fell within the exclusion, making summary judgment appropriate as a matter of law. The court concluded the chemical ethyl parathion was a pollutant as defined by the policy, and Mr. Graham's injury was the result of the escape of that pollutant. Red Panther argues that the Total Pollution Exclusion is ambiguous, making summary judgment improper. We agree.

The underlying claim in this case involves a bizarre set of circumstances eerily reminiscent of the trials and tribulations of the legendary Mrs. Palsgraf.[2] A.L. McAllister Trucking Company picked up forty-eight 55-gallon drums and two hundred seventy-two 5-gallon containers of the insecticide ethyl parathion from Red Panther's manufacturing plant in Clarksdale, Mississippi. McAllister was engaged by Estes Chemical Company to truck the pesticide to a variety of locations, including several in Oklahoma. The cargo was loaded and secured on the McAllister truck by Red Panther representatives in Mississippi. The truck made at least one other stop where some of the pesticide was unloaded, and other items were added to the cargo. While the truck was traveling outside Oklahoma City, seven of the 5-gallon containers fell off onto Interstate 40. A vehicle driven by Vonnie Brown struck and dragged one of the errant containers for several miles. Noticing an engine warning light in her vehicle, Mrs. Brown drove to a service station in El Reno, Oklahoma, to have the car examined. At the station, mechanic Dennis Graham hoisted the Brown vehicle on a lift and became exposed to the ethyl parathion by inhaling chemical fumes and absorbing the insecticide through his skin. Mr. Graham alleged that the chemical dripped on him when he placed Mrs. Brown's automobile on the rack to search for the broken oil or hydraulic line he suspected was the cause of Mrs. Brown's problem. Mr. Graham sued Red Panther in Oklahoma state court. Some time later, the Insurance Company informed Red Panther that it was denying coverage for Mr. Graham's claim and would not defend the company in any lawsuits because the claim was excluded from coverage under the policy's Total Pollution Exclusion. That exclusion reads:

## · TOTAL POLLUTION EXCLUSION

It is agreed that Exclusion (f) of SECTION I—COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, SUBSECTION 2. Exclusions, is replaced with the following:

f(1) "Bodily injury" or "property damage" at any premises, site or location and arising out of the actual, alleged, or threatened *discharge, dispersal, release, or escape of pollutants.* This "bodily injury" or "property damage" that arises may be due to any of the insureds operations including those which produce a "products—completed operations hazard."

(2) Any loss, costs, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, includ-

---

**1.** Both parties stipulated before the district court that Mississippi law governed the interpretation of the insurance contract. Oklahoma's choice of laws rule provides, "the nature, validity and interpretation of a contract is governed by the law where the contract is made." *Bohannan v. Allstate Ins. Co.,* 820 P.2d 787, 793 (Okla.1991); *see* *also Panama Processes v. Cities Servs. Co.,* 796 P.2d 276, 287 (Okla.1990).

**2.** *See Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928).

ing smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

All other terms and conditions remain unchanged. (emphasis added).

■ We review the district court's grant of summary judgment de novo, applying the same standard used by the trial court under Fed.R.Civ.P. 56(c). *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 429 (10th Cir.1990); *Building & Constr. Dep't v. Rockwell Int'l Corp.,* 7 F.3d 1487, 1492 (10th Cir.1993). Summary judgment shall issue if the evidence before the court, viewed in the light most favorable to the party opposing the motion, indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In this case, the district court concluded the plain language of the Total Pollution Exclusion precluded coverage for Mr. Graham's claim. The court held no genuine issue of material fact necessitated a trial because no extrinsic evidence such as the intent of the parties or the common usages and understandings of the insurance industry was necessary to interpret either the exclusion or the insurance policy as a whole. The question we must resolve, then, is whether the district court correctly concluded that the Total Pollution Exclusion unambiguously applied to Mr. Graham's claim.

■ We are guided by Mississippi law which establishes a number of conventions for interpreting insurance contracts. Plain and unambiguous language in an insurance policy is to be construed just as in any other contract. *Employers Mut. Cas. Co. v. Nosser,* 250 Miss. 542, 164 So.2d 426, 430, *suggestion of error overruled,* 250 Miss. 542, 168 So.2d 119 (1964) (rehearing on other grounds). All of the provisions of an insurance policy must be read together, giving effect to each. *Employers Ins. of Wassau v. Trotter Towing Corp.,* 834 F.2d 1206, 1210 (5th Cir.1988); *Continental Cas. Co. v. Hester,* 360 So.2d 695, 697 (Miss.1978). However, in contrast, ambiguous insurance policies should be construed in favor of the insured. *Griffin v. Maryland Cas. Co.,* 213 Miss. 624,

57 So.2d 486, 489 (1952). They are construed in light of the circumstances in which they were issued and according to common usages and understandings. *Lumbermen's Mut. Cas. Ins. Co. v. Randle,* 370 F.2d 68, 72 (5th Cir.1966). To determine the meaning of a particular phrase in an insurance contract and therefore decide which of the above interpretive rules apply, Mississippi law provides:

> [W]ords, terms, phrases and clauses in insurance contracts are to be given their everyday meanings, not hypertechnical or esoteric definitions, but their plain and common meaning. *Aero International, Inc. v. United States Fire Ins. Co.,* 713 F.2d 1106, 1109 (5th Cir.1983); *Benton v. Canal Insurance Co.,* [241 Miss. 493] 130 So.2d 840 (1961); *Ferguson v. Provident Life & Acc. Ins. Co.,* [170 Miss. 504] 155 So. 168 (1934). This follows because insureds are not expected to be wordsmiths, schooled in the craft of lexicology and, further, because the law disfavors the employment of arcane, subtle definitions of common words which but promise to confuse even the educated and frustrate the unlearned.

*McFarland v. Utica Fire Ins. Co.,* 814 F.Supp. 518, 525 (S.D.Miss.1992), *aff'd,* 14 F.3d 55 (5th Cir.1994).

■ Applying these principles to this case, the exclusion can be considered unambiguous only if one can read its text in conjunction with the facts of Mr. Graham's claim and reach the conclusion the claim falls within the exclusion's terms. If there are two reasonable interpretations of the exclusion, then it is considered ambiguous.

The district court relied on four cases that involved similar pollution exclusion language. All four courts found the language to be unambiguous. *Guilford Indus., Inc. v. Liberty Mut. Ins. Co.,* 688 F.Supp. 792, 794 (D.Me.1988), *aff'd,* 879 F.2d 853 (1st Cir. 1989); *Alcolac, Inc. v. California Union Ins. Co.,* 716 F.Supp. 1546, 1549 (D.Md.1989); *League of Minn. Cities Ins. Trust v. City of Coon Rapids,* 446 N.W.2d 419, 422 (Minn.Ct. App.1989); *Budofsky v. The Hartford Ins.*

*Co.*, 147 Misc.2d 691, 556 N.Y.S.2d 438, 440 (S.Ct., Suffolk Co.1990).[3]

The determination of whether a particular pollution exclusion is ambiguous has not been an exact or a scientific inquiry. The courts that have addressed this issue have reached a variety of different and often contradictory conclusions.[4] Courts construing identical exclusions have held them either unambiguous or ambiguous depending on the circumstances of the particular case. No obvious organizing principle exists to distinguish those cases that have found a pollution exclusion unambiguous from those that reached the opposite conclusion.

Red Panther suggests courts have limited pollution exclusions found in corporate general liability policies to "environmental pollution." In support of this proposition, Red Panther cites a variety of cases but principally relies upon *Westchester Fire Ins. Co. v. City of Pittsburg, Kan.*, 794 F.Supp. 353, (D.Kan.1992), *aff'd*, 987 F.2d 1516 (10th Cir. 1993); and *Continental Cas. Co. v. Rapid–Am. Corp.*, 177 A.D.2d 61, 581 N.Y.S.2d 669 (1992), *aff'd*, 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506 (1993). Indeed, these cases can be read to limit the application of pollution exclusions to "environmental pollution." Unfortunately, however, other cases exist which do not fall neatly within Red Panther's paradigm. For example, in *League of Minn. Cities*, the court held the pollution exclusion applied to injuries suffered when nitrogen dioxide levels became dangerous in an arena as a result of by-products from a Zamboni ice cleaning machine. Further, in *Park–Ohio Indus. v. Home Indem. Co.*, 785 F.Supp. 670 (N.D.Ohio 1991), *aff'd*, 975 F.2d 1215 (6th Cir.1992), soot, smoke, fumes, dust pollutants, and other particulates emitted during the rubber denuding process were judged to be within the pollution exclusion.[5] *Park–Ohio* and *League of Minn. Cities* cannot be readily classified as limiting the scope of pollution exclusions solely to incidents of "environmental pollution." The facts and circumstances of both cases extend beyond traditional notions of pollution of the environment. Thus, we cannot accept as a universal principle Red Panther's suggestion that pollution exclusions have been applied only to "environmental pollution."

■ Despite the lack of a universal rationale for the resolution of pollution exclusion insurance coverage cases, we believe several principles exist that will assist courts in resolving them. This holds especially true when a district court is called upon to decide

---

3. The Total Pollution Exclusion in this case appears to be a third generation attempt by the insurance industry to address this problem. Originally, most insurance policies contained what has become known as a "qualified exclusion." These exclusions denied coverage for the escape of pollutants unless they were "sudden and accidental." *See generally Pennsylvania Nat. Mut. Ins. Co. v. City of Pittsburg, Kan.*, 987 F.2d 1516 (10th Cir.1993); Nancer Ballard & Peter Manus, *Clearing Muddy Waters: Anatomy of the Comprehensive General Liability Exclusion*, 75 Cornell L.Rev. 610 (1990). The second generation policies contained what has become known as an "absolute exclusion." These policies eliminated the "sudden and accidental" language found in their predecessors. *See generally Union Mut. Fire Ins. Co. v. Hatch*, 835 F.Supp. 59, 64 (D.N.H.1993); *City of Salina, Kan. v. Maryland Cas. Co.*, 856 F.Supp. 1467 (D.Kan.1994). The exclusions contained in the cases cited by the district court are second generation exclusions. The Total Pollution Exclusion found in Red Panther's policy is an endorsement that replaced a second generation exclusion. The parties have not cited, and we have been unable to locate, any case that has construed a third generation exclusion identical to the one at issue here.

4. *Compare Titan Holdings Syndicate v. City of Keene, N.H.*, 898 F.2d 265, 269 (1st Cir.1990); *American States Ins. Co. v. F.H.S., Inc.*, 843 F.Supp. 187, 190 (S.D.Miss.1994); *Bureau of Engraving v. Federal Ins. Co.*, 793 F.Supp. 209, 211–12 (D.Minn.1992), *aff'd*, 5 F.3d 1175 (8th Cir. 1993); *with Westchester; Minerva Enter. v. Bituminous Cas. Corp.*, 312 Ark. 128, 851 S.W.2d 403, 406 (1993); *West Am. Ins. Co. v. Tufco Flooring*, 104 N.C.App. 312, 409 S.E.2d 692, 697 (1991); *American Star Ins. Co. v. Grice*, 121 Wash.2d 869, 854 P.2d 622, 627 (1993); *Regent Ins. Co. v. Holmes*, 835 F.Supp. 579 (D.Kan. 1993). Of course, the four cases relied upon by the district court fall within the first category of cases holding a pollution exclusion unambiguous.

5. Rubber denuding is a process "designed and intended to break the bond between the rubber tread and metal components of the tracks of the tanks and armored personnel and missile carriers." *Park–Ohio Indus. v. Home Indem. Co.*, 785 F.Supp. 670, 672 (N.D.Ohio 1991), *aff'd*, 975 F.2d 1215 (6th Cir.1992).

a case on summary judgment. In the instant case, the district court appears to have concluded, if an exclusion has been found unambiguous in one context, it is unambiguous in all other contexts. We think the correct inquiry is whether the insurance policy exclusion is unambiguous when applied to the facts and circumstances of the particular case. Here is where the convoluted facts of this case become important.

We do not believe it presently evident Red Panther and the Insurance Company unambiguously contracted to exclude coverage for this claim based upon the Total Pollution Exclusion endorsement. We reach this conclusion because of the unique factual circumstances involved in Mr. Graham's underlying claim against Red Panther. The critical question is whether the word "escape" contained in the exclusion is meant to include the expulsion of a container of pollutants from a moving vehicle. We believe that provision is ambiguous; therefore, in this context, summary judgment was not appropriate.

Our conclusion is buttressed by two additional considerations. First, many of the courts holding a pollution exclusion was ambiguous have done so in cases that involved atypical factual situations like this one. *See, e.g., Minerva Enter. v. Bituminous Cas. Co.*, 312 Ark. 128, 851 S.W.2d 403 (1993) (tenant sued mobile home park owner after their septic tank backed up and flooded their residence); *West Am. Ins. Co. v. Tufco Flooring*, 104 N.C.App. 312, 409 S.E.2d 692 (1991) (chemicals used in floor resurfacing activities in a chicken processing plant damaged the chickens); and *American Star Ins. Co. v. Grice*, 121 Wash.2d 869, 854 P.2d 622 (1993) (landfill caught fire causing damage to neighboring property holders' homes). Second, the third generation pollution exclusion at issue here has not yet been the subject of extensive litigation like its predecessors. This fact makes an exploration into the factual background and intent of the exclusion particularly appropriate.

We hold that as applied to the facts and circumstances of this claim, the Total Pollution Exclusion in Red Panther's policy is not unambiguous as a matter of law. The district court must, therefore, conduct a factual inquiry into the proper scope of the exclusion, based on the common usages and understandings of the insurance industry, and the purposes of the exclusion in conjunction with the hazards and risks Red Panther's policy was designed to protect against. After considering all the evidence, the district court must then determine whether the facts and circumstances of Mr. Graham's claim fall within the intended scope of the Total Pollution Exclusion of the policy.[6]

**REVERSED** and **REMANDED.**

---

**6.** On appeal, Red Panther raised two additional issues. First, the Insurance Company was estopped from denying coverage of the claim because it waited an excessive period of time before it did so. Second, its claim of bad faith on the part of the Insurance Company should have been submitted to a jury. Because of our resolution of this case, we do not need to address either of these issues and decline to do so at this time.