69 F.3d 547
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 BITUMINOUS CASUALTY CORPORATION, Plaintiff-Appellee,
v.
ST. CLAIR LIME COMPANY; Homer H. Dunlap, doing business as
St. Clair Lime Company, General Partner,
Defendant-Appellant.
 No. 94-6436.
(D.C.No. CIV-93-2056-A).
 United States Court of Appeals, Tenth Circuit.
 Oct. 27, 1995.
 
 Before ANDERSON, HOLLOWAY and LUCERO, Circuit Judges.
 ORDER AND JUDGMENT[1]
 CARLOS F. LUCERO, Circuit Judge.
 
 
 1
 St. Clair Lime Company ("St. Clair" or "the insured"), a producer of quicklime, appeals from an entry of summary judgment in favor of its commercial liability insurer, Bituminous Casualty Corporation ("Bituminous").[2] In the proceedings before the district court, Bituminous sought a declaratory judgment that under its general commercial liability policy ("the policy") with St. Clair it owed no duty to defend or indemnify the insured against claims alleged in a mass tort action known as the "Lone Star Steel Litigation." St. Clair answered and counterclaimed based on Bituminous's failure to defend and indemnify.
 
 
 2
 Both parties filed motions for summary judgment. Bituminous took the position that the pollution exclusion clause of the policy eliminated any obligation to defend or indemnify St. Clair in the Lone Star Steel Litigation. St. Clair contended that the pollution exclusion clause did not extinguish coverage for all liability asserted of the Lone Star Steel Litigation complaint and, therefore, Bituminous had an obligation to defend against all claims and indemnify St. Clair against damages falling outside the pollution exclusion.
 
 
 3
 The district court granted summary judgment in favor of Bituminous. It found the policy unambiguous, and concluded that the pollution exclusion clause was applicable to all claims made against St. Clair in Lone Star Steel Litigation.
 
 
 4
 On appeal, St. Clair raises three significant issues that suggest summary judgment for Bituminous was inappropriate: (1) some of the claims made in the Lone Star Steel Litigation are not covered by the pollution exclusion clause; (2) the pollution exclusion clause is ambiguous, and further proceedings are necessary to determine the parties' intent; and (3) the products-completed operations hazard coverage is not subject to the pollution exclusion clause. We consider St. Clair's arguments, and affirm.[3]
 
 BACKGROUND
 
 5
 The parties do not dispute the material facts of the case. They differ only as to the legal consequence of those facts, particularly the significance of allegations in the Lone Star Steel Litigation. The policy covers the period from May 18, 1987 to May 18, 1988. It provides that Bituminous "will pay those sums that [St. Clair] becomes legally obligated to pay as damages ... to which this insurance applies ... which occurs during the policy period." Bituminous also assumes the duty to defend any suit seeking those damages. Separate coverage in the policy extends to include damages from "products-completed operations hazards." The policy lists a number of exclusions to which the "insurance does not apply." Among these is an exclusion of damages caused by "pollutants."
 
 
 6
 After the policy became effective, St. Clair was named a defendant (along with other suppliers of materials used in the production of steel) in the Lone Star Steel Litigation. Plaintiffs' Fourth Amended Petition, filed in Texas state court on August 31, 1990, as well as two subsequent amended petitions, alleges "massive toxic exposure and resulting injuries and deaths to hundreds of workers" at the Lone Star Steel Mill.[4] The core allegation of plaintiffs' case is that "[t]he daily use of defendants' unsafe products and defendants' negligent premises operations created visible fog-like pollution containing toxins, fumes, and particulates." This exposure allegedly continued over a forty year period. According to the petition, "[t]he actual physical injury occurred through the adverse effects on the genetic material within the body cells."
 
 
 7
 St. Clair requested Bituminous to defend it in the state proceedings. Bituminous refused. It asserted that the pollution exclusion clause excepts any coverage obligation for allegations made in the Petition against the insured. St. Clair subsequently secured and paid for its own defense, and settled with the Lone Star Steel plaintiffs. Before the final settlement, Bituminous filed a complaint for declaratory judgment in the Western District of Oklahoma. This litigation followed.
 
 DISCUSSION
 
 8
 We review the grant of summary judgment de novo, applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c). James v. Sears, Roebuck & Co., 21 F.3d 989, 997-98 (10th Cir.1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard, we construe the factual record and all reasonable inferences from the record in the view most favorable to St. Clair, the party opposing summary judgment. Blue Circle Cement, Inc. v. Board of County Comm'rs, 27 F.3d 1499, 1503 (10th Cir.1994).
 
 
 9
 The district court properly found that the dispute must be resolved under Oklahoma law.[5] Looking to Oklahoma law, we note that contracts must be interpreted to give effect to the intention of the parties at the time of contracting, and that their intent is to be determined from the terms of the contract itself. Amoco Prod. Co. v. Lindley, 609 P.2d 733, 741 (Okla.1980). "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Okla. Stat. Ann. tit. 15 154 (West 1993). Following the majority rule, Oklahoma liberally construes the terms of insurance contracts in favor of the insured. Dayton Hudson Corp. v. American Mut. Liab. Ins. Co., 621 P.2d 1155, 1158 (Okla.1980). The language of a policy is ambiguous if it is reasonably susceptible of two meanings; in such cases "the words of inclusion are liberally construed in favor of the insured and words of exclusion are strictly construed against the insurer." Id. at 1158 & n. 10.
 
 
 10
 With respect to the duty to defend, the rule in Oklahoma is that "when the pleaded allegations of the insured's adversary state facts, which, if proved, would bring the insured's asserted liability within the coverage of the policy, then the insurer is thereby obliged to defend the insured." Maryland Casualty Co. v. Willsey, 380 P.2d 254, 258 (Okla.1963). The duty to defend is thus broader than the duty to indemnify because the insurer's obligation to indemnify is determined by facts that are usually established beyond the pleading stage. See American Motorists Ins. Co. v. General Host Corp., 946 F.2d 1489, 1491 (10th Cir.1991). Still, some claim in the underlying complaint must arguably be within the policy's coverage in order to trigger the duty to defend. An insurer has no obligation to defend an action against its insured where the "insurer would not be liable under its policy for any recovery in such suit." Torres v. Sentry Ins., 558 P.2d 400, 401-02 (Okla.1976); see also Massachusetts Bay Ins. Co. v. Gordon, 708 F.Supp. 1232, 1234 (W.D.Okla.1989).
 
 
 11
 A. Ambiguity in the Pollution Exclusion Clause
 
 
 12
 St. Clair contends that the district court erred in finding the pollution exclusion clause unambiguous. It argues as a separate point of error that some of the claims of liability alleged against St. Clair in the Petition do not fall within the pollution exclusion clause. These issues fold into one another. Ambiguity in the language of the policy is determined by reference to the allegations in the Lone Star Steel Petition. In a similar situation, we have held in order to determine whether a pollution exclusion clause is susceptible of two meanings, the proper inquiry is whether the language of the exclusion is unambiguous when applied to the facts and circumstances of the particular case in which coverage is asserted. See Red Panther Chemical Co. v. Insurance Co., 43 F.3d 514, 517-18 (10th Cir.1994) (applying Mississippi law).
 
 
 13
 The pollution exclusion clause in the policy states:
 
 
 14
 This insurance does not apply to: ... (1) bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.... Subparagraph (1) above does not apply to bodily injury or property damage caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable, or breaks out from where it was intended to be.
 
 
 15
 Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.[6] (Endorsement # 2) The pollution exclusion clause carves out from the insurance coverage certain causes of bodily injury and property damage. Bituminous only has an obligation to indemnify and defend against damages to which the insurance applies. Thus, the relevant inquiry is whether the injuries alleged in the Lone Star Steel Litigation were caused other than by an "actual, alleged or threatened discharge, dispersal, release or escape of pollutants."[7] If so, or if the pollution policy does not unambiguously exclude coverage for all damage claims alleged in the petition, the district court should not have granted Bituminous summary judgment.
 
 
 16
 The Lone Star Steel Litigation petition is purposefully very general as to acts, parties, and damages. The pleading is not organized into numbered paragraphs and allegations are not restated for each cause of action. Nevertheless, it is clear from the Petition that the Lone Star Steel plaintiffs allege their damages arose from "debilitating injuries and diseases" caused by "widespread and continuous exposure to defendants' products and operations." The products and operations allegedly were dispersed into "fog-like pollution," smoke and smog, "containing toxins fumes and particulates." The actual physical injuries "occurred through the adverse effects on the genetic materials within the body cells."
 
 
 17
 These allegations fit well within even a narrow reading of this pollution exclusion clause. See Red Panther 43 F.3d at 518; (insured argued that only "environmental pollution" was excluded); Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1043 (7th Cir.1992) (insured urged that "the term pollutants' does not encompass any release of irritants or contaminants, but rather only those releases associated with industrial emissions, waste disposal, or other pollution-generating activities"); Westchester Fire Ins. Co. v. City of Pittsburg, 794 F.Supp. 353, 355 (D.Kan.1992) (the term "pollutant" as used in commercial liability policies contemplates a substance harmful or toxic to persons generally, and not merely those substances harmful to particular persons or property due to special circumstances), aff'd, 987 F.2d 1516 (10th Cir.1993). Although the Petition avoids stating how any defendant's product found its way to any plaintiff, there is no suggestion that the toxic "fog," "smog," or "smoke" was created by anything other than a release, escape or discharge of chemicals in an industrial activity.
 
 
 18
 Upon reading the pollution exclusion clause in conjunction with the Petition, we, like the district court, find no ambiguity. All damages alleged by plaintiffs in the underlying litigation fall squarely within those risks excepted from insurance by the pollution exclusion clause.
 
 
 19
 B. Pollution Exclusion Clause Application to "Products" or
 
 
 20
 "Completed Operations"
 
 
 21
 St. Clair contends that the district court erred in finding that the pollution exclusion applies to liability for finished products or completed operations. As part of its policy, St. Clair purchased coverage for "products-completed operations." This coverage for "products-completed operations hazard" includes:
 
 
 22
 all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except: (1) Products that are still in your physical possession; or (2) Work that has not yet been completed or abandoned.
 
 
 23
 "Your product" means "any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by [St. Clair]," as well as "containers ... materials, parts, or equipment furnished in connection with such goods or products." St. Clair's "product" also includes "warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items" listed as "your product." Courts have traditionally defined "products" in this context as the "goods or services which the insured deals in as his stock or trade." Hydro Sys., Inc. v. Continental Ins. Co., 929 F.2d 472, 475 (9th Cir.1991) (quotations and citations omitted).
 
 
 24
 The Lone Star Steel plaintiffs claim that their damages arose due to quicklime, among other causes. Because quicklime constitutes the insured's "product" or "completed operations," St. Clair maintains that insurance coverage should have attached. At the very least, St. Clair argues, the conflict between the pollution exclusion clause and the products-completed operations coverage raises a genuine issue of material fact regarding the intent of the parties.
 
 
 25
 If the products-completed operations coverage is inconsistent with the pollution exclusion clause, the intent of the parties would not be clear and the trial court would need to consider extrinsic evidence. See United States ex rel. Bachman & Keffer Constr. Co. v. H.G. Cozad Constr. Co., 324 F.2d 617, 619 (10th Cir.1964) (applying Oklahoma law). On its face, there is no tension in the policy between the pollution exclusion clause and the products-completed operations hazard coverage. The products-completed operations coverage is part of "Coverage A," which is part of the insuring agreement. Under the heading, "COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY," the policy states that the obligation to indemnify and duty to defend only arise with respect to "damages because of bodily injury' or property damage' to which this insurance applies " (emphasis added). Insurance does not apply to damages arising from bodily injury or property damage falling within the pollution exclusion clause. The pollution exclusion clause does not limit the exclusion to injury or damage caused by a specific form of pollution; it applies to damages from any "pollutant." There is no language in the policy to suggest that the insured's "product," as contemplated in the products-completed operations hazard coverage, could not be a "pollutant."
 
 
 26
 St. Clair notes that at least one case has found products-completed operations coverage language to be inconsistent with, and overridden by, a pollution exclusion clause. See West Am. Ins. Co. v. Tufco Flooring East, Inc., 409 S.E.2d 692 (N.C.Ct.App.1991). Tufco involves an earlier generation of the pollution exclusion clause.[8] See generally Red Panther, 43 F.3d at 518 n. 3 (discussing the evolution of the pollution exclusion clause). In this earlier version the pollution exclusion was limited to works in progress. Hence, the Tufco exclusion could be read not to reach final products or completed operations; products-completed operations coverage is by definition for works that are no longer in progress.
 
 
 27
 Some policies specifically exclude products-completed operations hazards from the pollution exclusion. Cf. Hydra Sys., Inc., 929 F.2d at 474. The pollution exclusion clause in St. Clair's policy is not so limited. See Crescent Oil Co., Inc. v. Federated Mut. Ins. Co., 888 P.2d 869, 874 (Kan.Ct.App.1995) (finding that products-completed operations clause does not cover hazards excluded by pollution exclusion clause similar to that in the policy). The district court correctly found that the products-completed operations coverage did not affect the scope of the pollution exclusion clause.[9]
 
 
 28
 Because the policy unambiguously does not insure against claims made against St. Clair in the Lone Star Steel Litigation, Bituminous has no obligation to defend or indemnify the insured for allegations in the Petition.
 
 CONCLUSION
 
 29
 For the reasons set out above, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order. 151 F.R.D. 470 (10th Cir.1993)
 
 
 [2]
 St. Clair filed a timely notice of appeal, and our jurisdiction is founded on 28 U.S.C. 1291
 
 
 [3]
 St. Clair also requests remand to the district court for a calculation of attorney's fees and resolution of its counterclaims against Bituminous. Because we find that the district court properly granted summary judgment to Bituminous, we need not remand
 
 
 [4]
 We use the Sixth Amended Petition (the "Petition") as the reference for our analysis. The Petition is the last filed by the state court plaintiffs. In the district court St. Clair referred also to earlier versions of the Petition as evidence that Bituminous had a duty to indemnify and defend. It first made demand upon Bituminous based on allegations in the Fourth Amended Petition. The language quoted in this order and judgment appears in the Fourth and Fifth Amended Petitions as well
 
 
 [5]
 It is unclear whether the parties stipulated to the choice of law. The district court applies the choice of law rules of the state in which it sits. Taylor v. Phelan, 9 F.3d 882, 885 (10th Cir.1993). Oklahoma's choice of law rule provides that the nature, validity and interpretation of a contract is governed by the law where the contract is made or is to be performed. Okla. Stat. Ann. tit. 15 162 (West 1993); Bohannan v. Allstate Ins. Co., 820 P.2d 787, 793 (Okla.1991). The policy was made in Oklahoma and was to be performed in Oklahoma
 
 
 [6]
 This is an advanced version of what is known in the industry as an "Absolute Pollution Exclusion Clause." See Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes 10.02(e) (1995)
 
 
 [7]
 St. Clair goes astray when it argues that policy coverage applies because the plaintiffs' theories of recovery in the complaint include injuries caused by negligence, strict liability, and breach of warranty. The pollution exclusion clause does not remove coverage for certain causes of action; it excludes from coverage injuries and property damage arising from specific causes in fact. See, e.g., Park-Ohio Indus., Inc. v. Home Indem. Co., 975 F.2d 1215, 1223 (6th Cir.1992) (refusing to treat an alleged manufacturing defect as a cause in fact of injuries sustained from inhaling pollutants)
 
 
 [8]
 In St. Clair's policy, this earlier generation appeared in the printed policy form, but was superceded by "Endorsement # 2" in which the current language appears
 
 
 [9]
 Although not explicitly raised by St. Clair, under Oklahoma law the language of the contract controls only if it "does not involve an absurdity." Okla. Stat. Ann. tit. 15 154 (West 1993). If because of the pollution exclusion clause there was no circumstance in which the products-completed operations hazard coverage would protect St. Clair for suits based on injuries from quicklime, then we might consider a plain reading of the policy language to create an absurdity. See Franks v. Bridgeman, 63 P.2d 984, 987-88 (Okla.1936) (courts should avoid interpreting contract clause in a manner that would render it to no effect). In this case, however, the products-completed operations coverage might still provide coverage in a number of circumstances: if the pollution damage was caused by a hostile fire; if quicklime injured a person because it was improperly packaged; or if a person was injured because materials (such as concrete) failed on account of substandard quicklimen. While the pollution exclusion clause certainly cuts into the coverage provided by the products-completed operations hazard, it does not render the coverage meaningless