[No. 59189-0.   En Banc.   July 8, 1993.]

AMERICAN STAR INSURANCE COMPANY, *Respondent*, v. EARNEST L. GRICE, ET AL, *Defendants*, MARGARET ANN KING, ET AL, *Appellants*, GREAT AMERICAN INSURANCE COMPANY, *Respondent*.

---

*J. Patrick Duffy, Jr.,* and *Messina Bufalini Bulzomi,* by *Virginia L. De Costa,* for appellant King.

*John Francis Kennedy,* for appellant Tacoma.

*Keller Rohrback,* by *Kirk S. Portmann,* for respondent American Star Insurance Co.

*Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* by *Duncan K. Fobes,* for respondent Great American Insurance Co.

ANDERSEN, C.J. —

## FACTS OF CASE

At issue in this case is construction of the pollution exclusion clauses in two liability insurance policies.[1] The insurers[2]

---

[1]Although there were apparently some issues regarding coverage dates and other coverage issues, they are not at issue in this appeal; the only issue before us involves the construction of the pollution exclusion clauses.

[2]Great American Insurance Company issued one of the liability insurance policies at issue in this case. American Star Insurance Company was the successor in

brought a declaratory judgment action seeking declarations of noncoverage. A summary judgment was entered by the trial court denying coverage, and the insureds[3] appealed. The Court of Appeals certified the appeal to this court. We accepted the certification and hereby reverse and remand the case to the trial court for determination of such issues as remain in the case.

Over a period of time, the insureds demolished buildings and deposited the waste materials therefrom on a 5-acre parcel of land they owned. They began using the property as

interest to Classified Insurance Corporation which issued another liability insurance policy to the insureds in this case.

After this case was briefed, argued and the opinion ready for filing, this court was informed that American Star Insurance Company had been declared by a Wisconsin court to be an insolvent insurer. Wisconsin is a "reciprocal state" under the Uniform Insurers Liquidation Act, RCW 48.31.110(7). The Washington Insurance Guaranty Association (WIGA) then filed a motion for a 180-day stay pursuant to RCW 48.32.160. This court granted the motion to stay the case pending WIGA's determination whether to intervene in the action. When the statutory stay expired, WIGA informed this court that it did not wish to intervene and that, therefore, under the Wisconsin restraining order the action was effectively abated as to American Star. The appellants, however, argue that the Wisconsin order does not necessarily abate the action as to American Star. Because the resolution of this case may make the necessity for further briefing on the "abatement" issue unnecessary, we have decided to file the opinion but to stay its effect as to American Star for 60 days pending further optional briefing on the issue of the effect of the Wisconsin court order on this court's jurisdiction. WIGA concedes the Great American policy has certain language in common with the American Star policy and that stare decisis, which would mandate identical judicial treatment of the comparable language, would probably bind WIGA. WIGA does point out that there are certain defenses which are uniquely available to it under the Washington Insurance Guaranty Association Act (such as exhaustion) which it may need to assert at the trial court in the event of a remand. Since this case has to be remanded to the trial court in any event, WIGA may therefore petition to intervene in that court. In order to avoid further delay, the case will be filed with the effect as to American Star stayed for 60 days. In the event the parties choose not to submit further briefing, the action will be abated with regard to American Star Insurance Company.

[3]The named insureds on the Classified policy are Earnest L. Grice & Sons, Inc., Earnest L. and Hattie Arlean Grice, individually, and Northwest General Services. The insured on the Great American policy is Earnest L. Grice & Sons, Inc. For ease of reading, the arguments in favor of coverage are referred to as the insureds' contentions even though it is the insureds' neighbors and the City of Tacoma advancing the coverage claims of the insureds in this appeal.

a dumping ground in the early 1970's. Wood, concrete, wall-board, old tires, creosoted timbers, and other debris from 50 to 60 houses, a large mill and several service stations were ultimately deposited on the property. In addition, others also paid to dump materials on the property. Insureds deny ever depositing any hazardous materials on the property.

In early 1987, a fire started on the property. It burned intermittently for a period of time and proved very difficult to extinguish. There is no allegation or evidence that the fire was intentionally started. The parties appear to agree, at least for purposes of this appeal, that the fire was a hostile fire as that term is defined in the insurance policies.

Neighbors sued the insured and the City of Tacoma alleging that the fire released heavy, noxious, chemical-laden smoke and other debris from the landfill onto their property causing damage to health and property. The neighbors' complaint alleged negligence and that the insureds' conduct constituted nuisance and trespass. One of the insurers[4] filed this declaratory judgment action and a motion for summary judgment seeking an adjudication that its insurance policy did not provide coverage for any of the claims asserted by the neighbors. The second insurer[5] joined in the action and the motion seeking a declaration of noncoverage. Lloyds of London, which apparently had also issued a policy to the insureds, did not join in the motion for summary judgment.

The trial court granted the insurers' motions. Relying on the pollution exclusions in both policies, it concluded that there was no coverage for bodily injury caused by smoke from the fire and that the policies excluded coverage for property damage. The trial court also rejected the argument that smoke "wrongfully entered" the plaintiffs' property and so found no coverage under the personal injury coverage of the policies.

One issue is determinative of this appeal.

---

[4]American Star Insurance Company.

[5]Great American Insurance Company.

## ISSUE

Do the pollution exclusion clauses in the liability insurance policies in this case exclude coverage for damages caused by smoke from a hostile fire on the insureds' property used for waste disposal?

## DECISION

CONCLUSION. The pollution exclusion clauses, read together with the hostile fire exceptions to those clauses, are ambiguous under the facts presented. Since the extrinsic evidence does not clearly indicate that coverage is excluded, we construe the ambiguity in favor of the insureds and reverse the summary judgment in favor of the insurers.

The pertinent general rules regarding construction of insurance policies are well settled. Interpretation of insurance policies is a question of law and the policy is construed as a whole with the court giving force and effect to each clause in the policy.[6] The language of insurance policies is to be interpreted in accordance with the way it would be understood by the average person, rather than in a technical sense.[7]

If policy language is clear and unambiguous, the court may not modify the contract or create an ambiguity.[8] An ambiguity exists if the language is fairly susceptible to two different reasonable interpretations. If an ambiguity exists, then the court may attempt to determine the parties' intent by examining extrinsic evidence.[9] If a policy remains ambiguous even after resort to extrinsic evidence then this

---

[6] *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 95, 776 P.2d 123 (1989); *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988).

[7] *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 881, 784 P.2d 507, 87 A.L.R.4th 405 (1990).

[8] *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 435, 545 P.2d 1193 (1976).

[9] *Fraternal Order of Eagles, Aerie 649 v. General Accident Ins. Co. of Am.*, 58 Wn. App. 243, 245, 792 P.2d 178, *review denied*, 115 Wn.2d 1018 (1990); *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 200, 743 P.2d 1244 (1987).

court will apply the rule that ambiguities in insurance contracts are construed against the insurer.[10] The rule strictly construing ambiguities in favor of the insured applies with added force to exclusionary clauses which seek to limit policy coverage.[11] Exclusions of coverage will not be extended beyond their "clear and unequivocal" meaning.[12] When an insured establishes a prima facie case giving rise to coverage under the insuring provisions of a policy, the burden is then on the insurer to prove that a loss is not covered because of an exclusionary provision in the policy.[13]

An insurer which has reserved the right and duty to defend is obliged to defend any suit alleging facts which, if proved, would render the insurer liable. However, where alleged claims are clearly not covered by the policy, an insurer is relieved of its duty to defend.[14]

The question then is whether an average person would have understood that the pollution exclusion clauses in the insurance policies unambiguously denied coverage for damages caused by a hostile fire on land owned by the insureds and used for waste disposal.

For purposes of the summary judgment motions before us, the only issue is whether the pollution exclusion clauses exclude liability coverage otherwise available under the policies.

The pollution exclusion clause in one policy[15] states:

---

[10]*Eagles*, 58 Wn. App. at 245; *Greer*, 109 Wn.2d at 201.

[11]*Greer*, 109 Wn.2d at 201; *Brosseau*, 113 Wn.2d at 97. B. Ostrager & T. Newman, *Insurance Coverage Disputes* § 1.03[b], at 13 (4th ed. 1991).

[12]*McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 915, 631 P.2d 947 (1981).

[13]*Public Employees Mut. Ins. Co. v. Rash*, 48 Wn. App. 701, 703, 740 P.2d 370 (1987); B. Ostrager & T. Newman § 8.02(a), at 255.

[14]*State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 486, 687 P.2d 1139 (1984).

[15]The Great American policy.

This insurance does not apply to:

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

    (a) At or from premises you own, rent or occupy;

    (b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

    (d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

        (i) if the pollutants are brought on or to the site or location in connection with such operations; or

        (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2) Any loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

An endorsement to the policy entitled "Amendment of Pollution Exclusion" adds a hostile fire exception to the pollution exclusion clause:

The following is added to exclusion f of COVERAGE A (Section 1):

Subparagraphs (a) and (d)(i) of paragraph (1) of this exclusion do not apply to "bodily injury" or "property damage" caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

For all practical purposes, the pollution exclusion endorsement (which also includes a hostile fire exception) in the other policy[16] is almost identical.

The insurers argue that this new "absolute" pollution exclusion (as contrasted with the older "qualified" pollution exclusions construed in *United Pac. Ins. Co. v. Van's Westlake Union,*

---

[16]The American Star policy.

*Inc.*, 34 Wn. App. 708, 664 P.2d 1262, *review denied*, 100 Wn.2d 1018 (1983) and *Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 64 Wn. App. 838, 827 P.2d 1024 (1992), *review granted*, 120 Wn.2d 1025 (1993)) has been repeatedly held to be unambiguous and to deny coverage for pollution damages. While it is true that there are many cases which have so held, none of those cases involved interpretation of the hostile fire exception to the pollution exclusion and hence do not aid in resolution of the issue before us in this case. The ability of the pollution exclusion to limit coverage is itself limited by the hostile fire clause which provides an exception to that exclusion.

The dispositive issue here, then, is whether the hostile fire exception to the pollution exclusion creates an ambiguity as to coverage under the facts of this case. The hostile fire exception applies to reinstate coverage with regard to part "(1)(a)" but not part "(1)(b)" of the exclusion. Such limited record as we have before us shows that the insureds owned the property and used it as a repository for waste and that the fire was a hostile fire. Therefore, the question becomes whether coverage is provided (under section "(1)(a)") for damages caused by smoke from a hostile fire because the insureds "own" the land, or whether coverage is excluded (under section "(1)(b)") because they "used" the property to store waste. The insureds argue that pollution damage (from smoke) created by the hostile fire on property owned by the insureds is covered under section "(1)(a)". The insurers argue that these damages, even though resulting from a hostile fire, are excluded under section "(1)(b)" because the insureds used the property to store waste.

The insurers argue that section "(1)(a)" drops out of the policy by operation of the hostile fire exception to the pollution exclusion leaving section "(1)(b)" which would deny coverage. The problem with this argument is that it does not comport with the general rule that an insurance policy must be considered as a whole with the court giving effect to each clause in it.[17] An average insurance buyer might reasonably

---

[17]*E.g.*, *Boeing*, 113 Wn.2d at 876; *see also* 2 R. Anderson, *Couch on Insurance* § 15:46, at 274-75 (2d ed. 1984); *United Pac. Ins. Co. v. Van's Westlake Union, Inc.*, 34 Wn. App. 708, 712, 664 P.2d 1262, *review denied*, 100 Wn.2d 1018 (1983).

conclude that if he or she owned the property upon which a hostile fire started, there would be coverage for damages caused by smoke from that hostile fire even when the property was being used for the storage of waste.

We conclude that the language of the pollution exclusion when read with the hostile fire exception thereto is fairly susceptible to differing reasonable interpretations by an average person. Since the language of the exclusion is ambiguous, we look to see if extrinsic evidence clarifies the intent of the parties.[18] In the absence of evidence showing an understanding that coverage was intended to be excluded, we will construe the policy to provide coverage.

The only two pieces of extrinsic evidence offered are a statement by an insured attesting to his belief that he was covered by the liability policies and a memorandum explaining the hostile fire exception sent from the Insurance Services Office (ISO)[19] to our State Insurance Commissioner.

■ The affidavit of the insured states that it was his understanding that the insurance policies protected him from any and all claims which might arise out of his business operations and that his insurance broker informed him he had full coverage for such claims. This kind of extrinsic "evidence" is not relevant in determining the meaning of an insurance contract. As this court has explained in the past, the affidavit of an insured that an insurance agent stated there was "full" coverage cannot reasonably lead to the expectation of coverage without limit when even a casual look at the policy will put a reader on notice that some exceptions to coverage do exist.[20]

---

[18]*Eagles*, 58 Wn. App. at 245; *Greer*, 109 Wn.2d at 198-200.

[19]The Insurance Services Office (ISO) is an insurance industry trade association which develops standard form insurance policies and often secures regulatory approval for their insurance. *See* N. Ballard & P. Manus, *Clearing Muddy Waters: Anatomy of the Comprehensive General Liability Pollution Exclusion*, 75 Cornell L. Rev. 610, 621 (1989-1990).

[20]*Emerson*, 102 Wn.2d at 485.

The insureds did, however, present a document entitled "Amendment of Pollution Exclusion Endorsement Explanatory Memorandum" sent to the Washington State Insurance Commissioner from the Insurance Services Office. Insurance Commissioner Marquardt certified that his office was a department of record, had custody of the original, and that the copy was accurate. The memorandum concerned the hostile fire exception to the pollution exclusion in general liability insurance policies and stated in pertinent part:

AMENDMENT OF POLLUTION EXCLUSION ENDORSE-
MENT EXPLANATORY MEMORANDUM

BACKGROUND    The new Commercial General Liability Policy contains a revised pollution exclusion. That exclusion applies, without distinction between sudden and gradual emissions, to pollution emanating from the insured's premises or a waste disposal or treatment facility. Also, clean-up costs are specifically excluded. . . .

Concern has arisen that a literal interpretation of the new exclusion might preclude coverage for liability not ordinarily considered pollution, namely bodily injury or property damage caused by smoke from a hostile fire.

PURPOSE
OF THIS
FILING    To address this situation, we are introducing Amendment of Pollution Exclusion Endorsements CG 00 41 (Ed. 5-86) and CG 28 40 (Ed. 5-86). *These endorsements state that the pollution exclusion does not apply to bodily injury or property damage caused by heat, smoke or fumes from a hostile fire on the insured's premises or job location.*

(Italics ours.)[21]

---

[21]The insurers initially argued that this memorandum should not be considered if the policies were unambiguous. At oral argument before this court, however, counsel for the insurers withdrew objection to its admissibility. We therefore are not called upon to discuss how the drafting history of a standard-form insurance policy can be used by courts either to clarify an ambiguity or to aid in determining whether a policy provision is ambiguous. *See generally* K. Abraham, *Environmental Liability Insurance Law* 36-42 (1991).

We conclude that this ISO memorandum does lend support to the insured's interpretation that smoke from a hostile fire on "the insured's premises or job site" is *not* excluded from coverage by the pollution exclusion because the hostile fire exception acts to reinstate such coverage.

Since the policy language is ambiguous (susceptible to two reasonable interpretations) on its face, and the extrinsic evidence does not show an unambiguous exclusion of coverage, we construe the ambiguity in favor of coverage.[22]

Since we conclude that the pollution exclusion clauses in question do not exclude coverage because of the hostile fire exceptions in the policies, it is not necessary to discuss the insureds' other arguments as to why the pollution exclusions do not apply in this case.

The insurers stipulated at oral argument before this court that any emotional distress damages would be encompassed by the bodily injury coverage of these policies. It is therefore unnecessary to reach insureds' alternative argument that coverage exists for emotional distress damages under the personal injury coverage of the policies.

It is also necessary to clarify one apparent factual error in the trial court's oral decision. The trial court appeared to say that based upon the "coversheet" (*i.e.*, the declarations page of the policies) there was no property damage coverage under *either* policy. Although there is no property coverage under one policy,[23] the insurers concede that there is property damage coverage under the other[24] unless coverage is excluded by the pollution exclusion clause.

---

[22]*Fraternal Order of Eagles, Aerie 649 v. General Accident Ins. Co. of Am.*, 58 Wn. App. 243, 245, 792 P.2d 178, *review denied*, 115 Wn.2d 1018 (1990); *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 201, 743 P.2d 1244 (1987).

[23]The American Star policy.

[24]The Great American policy.

The trial court's grant of summary judgment to the insurers is reversed; the case is remanded to the trial court for further proceedings consistent with this opinion.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.