[No. 37840-6-I.    Division One.    July 21, 1997.]

THE CITY OF REDMOND, *Appellant*, v. HARTFORD ACCIDENT AND INDEMNITY INSURANCE COMPANY, ET AL., *Respondents.*

2

*Michael J. Lande* and *McDonald & Quackenbush*; and *David A. Shaw*, for appellant.

*Carl E. Forsberg*; and *Patrick M. Paulich, Russell C. Love*, and *Thorsrud Cane & Paulich, Inc., P.S.*, for respondents.

4

AGID, J. — The City of Redmond appeals the trial court's summary dismissal of its claims against Hartford Accident & Indemnity Insurance Company, Twin City Fire Insurance Company, and Safeco Insurance Company of America for damage resulting from the discharge of heavily acidic wastewater into the City's sewers by their insured, Santa Clara Circuits North, Inc. Because that damage was not an "occurrence" within the meaning of the various policies, we affirm the trial court's order dismissing Redmond's claims.

## FACTS

From 1979 through 1989, Santa Clara Circuits North operated a circuit board manufacturing business in Redmond. The manufacture of circuit boards requires the use of low pH or acidic chemicals. In 1980 and again in 1984, Santa Clara obtained waste discharge permits from the Municipality of Metropolitan Seattle (Metro) which allowed it to discharge industrial waste waters into the municipal sewer system. The permits required Santa Clara to treat those wastes to protect against the potentially corrosive effect of acidic wastes on sewer pipes. They also required the company to continually monitor the pH level of its wastes and prohibited discharging wastes with a pH level below 5.5. Metro's monitoring records reflect that between 1979 and 1985, Santa Clara violated the permit conditions and discharged extremely acidic wastes with a pH level below 5.5 over 100 times. On some occasions, the pH level was lower than 2.5. Metro repeatedly notified Santa Clara of its noncompliance with the permit conditions, warning it that it would be held liable for any sewer

damage caused by its discharges and attaching a printout of the test results.

In December 1988, a television inspection of the sewer line revealed extensive damage to the pipes. On further investigation, Redmond determined that the damage had been caused by acidic discharges from Santa Clara's facility. In January 1992, Redmond sued Santa Clara to recover the anticipated costs of repair. In May 1993, Redmond obtained a partial stipulated judgment against the company, which had been liquidated pursuant to an involuntary bankruptcy in March 1990. In February 1994, Redmond obtained a similar judgment against its president, Louis Marinoni. In connection with entry of those stipulated judgments, Marinoni assigned his rights and those of Santa Clara under any applicable insurance policies to Redmond.

In an attempt to collect on its judgments, Redmond filed this action for declaration of coverage against three of Santa Clara's insurers: Hartford, Twin City and Safeco. Hartford and Twin City issued seven policies to Santa Clara, each of which provided coverage for "property damage . . . caused by an occurrence." While no Safeco policy insuring the company and Marinoni was discovered, secondary evidence showed that Safeco had insured both under a general liability policy from June 1979 to June 1981. The parties stipulated to the policy terms. As reconstructed, Safeco's policy also provided coverage for property damage caused by an "occurrence." The scope of each of the policies was also limited by various pollution exclusions.

Hartford and Twin City filed motions for summary judgment based on the pollution exclusions and on the ground that Redmond's claims did not fall within the scope of coverage because they were not based on an "occurrence" within the meaning of the various policies. Safeco joined in Hartford's and Twin City's motions. The trial court granted each of those motions. It also granted Safe-

co's motion to dismiss because of late notice of the underlying claim against its insureds.[1] Redmond appeals.[2]

## DISCUSSION

### Occurrence

■ In reviewing a grant of summary judgment, an appellate court engages in the same inquiry as the trial court, construing the facts and reasonable inferences from them in the light most favorable to the nonmoving party. *White v. State*, 131 Wn.2d 1, 8-9, 929 P.2d 396 (1997). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *White*, 131 Wn.2d at 9. A material fact is one on which the outcome of litigation depends. *Eriks v. Denver*, 118 Wn.2d 451, 456, 824 P.2d 1207 (1992). When reasonable minds can reach but one conclusion from the admissible facts in evidence, summary judgment should be granted. *White*, 131 Wn.2d at 9. Speculation and argumentative assertions that unresolved factual issues remain are not sufficient to defeat summary judgment. *White*, 131 Wn.2d at 9.

■ Redmond first challenges the trial court's ruling that the City's claims do not fall within the scope of coverage provided under their policies because the damage to the City's sewer line did not result from an "occurrence." Hartford's and Twin City's policies define an occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property

---

[1]While Redmond notified Hartford and Twin City of its intent to file an action against Santa Clara and its president, Louis Marinoni, it does not dispute that it did not notify Safeco of its intent at that time. Safeco did not receive notice of Redmond's lawsuit against Santa Clara until several months after the stipulated judgment was entered. The pertinent policy conditions required Santa Clara to give Safeco timely notice of any lawsuits against it.

[2]Even though the trial court granted summary judgment to Safeco on three separate bases, Safeco filed a cross-appeal challenging the trial court's denial of a motion for summary judgment on assignment. But denial of a motion for summary judgment is ordinarily not reviewable. *Zimny v. Lovric*, 59 Wn. App. 737, 739, 801 P.2d 259 (1990), *review denied*, 116 Wn.2d 1013 (1991). We therefore decline to reach the merits of Safeco's cross-appeal.

damage neither expected nor intended from the standpoint of the insured." Safeco's policy is virtually the same as that of Twin City and Hartford.[3] The construction of an insurance policy is a matter of law. *Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 126 Wn.2d 50, 65, 882 P.2d 703, 891 P.2d 718 (1994). An insurance policy is construed as a whole and " 'should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.' " *Queen City Farms*, 126 Wn.2d at 65 (quoting *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 95, 776 P.2d 123 (1989)); *Key Tronic Corp. v. Aetna Fire Underwriters Ins. Co.*, 124 Wn.2d 618, 627, 881 P.2d 201 (1994). Undefined terms should be given their plain, ordinary, and popular meaning. *Queen City Farms*, 126 Wn.2d at 65; *Key Tronic*, 124 Wn.2d at 627. For that reason, the ordinary meaning of undefined terms in an insurance policy may be ascertained using a standard English dictionary. *Queen City Farms*, 126 Wn.2d at 77. If the language of an insurance contract is clear and unambiguous, a court must enforce it as written and may not modify the contract or create ambiguity where none exists. *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988).

Under each of the insurance policies here at issue, damage is the result of an occurrence only when that damage was neither expected nor intended. Redmond concedes that Metro repeatedly notified Santa Clara that it was in violation of the prohibition against discharging excessively acidic wastes. But it argues that because Santa Clara was never informed that there was actual damage, a material factual question exists as to whether the

---

[3]Safeco's policy defines an occurrence as "an event including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

company "expected" the damage.[4] The test is a subjective one. *Queen City Farms,* 126 Wn.2d at 69. " 'Since proof of state of mind normally is indirect or circumstantial,' " however, indirect or circumstantial evidence " 'such as the obviousness of already-occurring harm' " may be considered in deciding whether the insured subjectively expected damage to occur. *Queen City Farms,* 126 Wn.2d at 69 (quoting KENNETH S. ABRAHAM, ENVIRONMENTAL LIABILITY INSURANCE LAW 134 (1991)). WEBSTER's DICTIONARY explains that "expect" means "to look for as likely to occur or appear; look forward to; anticipate." WEBSTER's NEW WORLD DICTIONARY 492 (2d ed. 1984). Expectation, in other words, is forward-looking and does not require that the damage have already occurred. Contrary to Redmond's argument, therefore, it was not necessary that Santa Clara be informed that there was actual damage in order for it to have known that damage was likely to result if it continued to discharge excessively acidic wastes.

Metro repeatedly warned Santa Clara that it was in violation of the permit condition prohibiting the discharge of such wastes. A printout of the pH level readings on which each warning was based was attached to each notice. Some of the readings showed that the discharges were roughly one thousand times more acidic than permitted. Although the precise language of the different warning letters varies slightly, Metro informed Santa Clara at various times that "acidic discharges may cause sewer damage" and that it "will be held liable for sewer damage caused by its acidic discharges." Once Metro notified Santa Clara that sewer damage could occur from acidic discharges, Santa Clara had sufficient information to allow it to anticipate that sewer damage was likely to occur if it continued to discharge heavily acidic wastes into Redmond's sewers. For this reason, the damage to Redmond's sewer pipes cannot reasonably be said to have been unex-

---

[4]While it was Metro's responsibility to enforce the waste discharge permits and to periodically monitor the effluent of its permittees, Redmond was responsible for maintaining its own sewer lines. Redmond received copies of Metro's notices to Santa Clara from Metro.

pected. It was therefore not an "occurrence" within the meaning of the various policies. The trial court correctly concluded that the damage at issue did not fall within the scope of coverage provided under the insurers' policies and properly granted summary judgment on that basis.[5]

The damage at issue was not an occurrence within the meaning of the various policies and was excluded from the scope of coverage on this basis alone. It is thus unnecessary to reach either the questions whether coverage would also have been precluded under the various exclusions or whether Redmond's complaint against Safeco was also subject to dismissal on the basis of untimely notice.

▮ Safeco requests attorney fees, arguing that its position is analogous to that of a garnishee defendant. It is not a garnishee defendant, attorney fees are not available by analogy, and there is no statute, rule or contract that would authorize such an award in the circumstances here. We therefore deny its fee request.

Affirmed.

---

[5]The declarations of Edward Duffek, a "wet processing" consultant hired by Santa Clara between October 1981 and 1989, and Kol Toth, an employee who held various jobs such as hand fabricator, fabrication supervisor, drilling operator, and production manager between 1979 and 1989, each stating that he personally did not expect or intend any damage to occur, that he "was never told by any SCC employee that they expected or intended that the rinse-water would harm or damage the City's sewer pipes," and that it was his "understanding that no employee of SCC expected or intended that the rinse-water would damage or harm the City's sewer pipes" do not change this result. Neither can speak either for Marinoni or for any other employee; their own personal lack of intent or expectation is immaterial.

Marinoni's deposition testimony, taken not in the context of this case but in Redmond's earlier case against Santa Clara, also does not change the result. Redmond raised the question whether that testimony was sufficient to create a question of fact for the first time in its reply brief. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (an appellate court will not consider an argument raised for the first time in a reply brief). While we deny Safeco's motion to strike, we decline to reach the issue because it was raised for the first time in Redmond's reply brief. We note, however, that even if the issue had been timely raised, the testimony would not create a material factual issue. Marinoni testified that the discharge violations were not something he "planned to do," that he did not intend to allow or permit discharge in excess of the permitted limits, and that he wasn't aware that there was any damage to the sewers until after they left the Redmond facility in 1985. None of these statements goes to the question whether Marinoni had reason to expect that damage.

10

BAKER, C.J., and WEBSTER, J., concur.

Review denied at 134 Wn.2d 1001 (1998).