981 P.2d 872 (1999)
96 Wash.App. 698
CLE ELUM BOWL, INC. and Francis M. Tompkins, Appellants,
v.
NORTH PACIFIC INSURANCE COMPANY, INC., Respondent,
Farmin, Rothrock and Parrott, Inc., Defendant,
Robert T. Lanphere, Appellant.
No. 17487-5-III.
Court of Appeals of Washington, Division 3, Panel Three.
June 8, 1999.
Publication Ordered August 5, 1999.
*874 James M. Beecher, Hackett Beecher & Hart, Seattle, WA, and Hugh W. Stroh Jr., Attorney At Law, Cle Elum, WA, for Appellants.
Richard C. Feltman, Feltman Gebhardt Eymann & Jones PS, Spokane, WA, for Respondent.
*873 SCHULTHEIS, C.J.
Cle Elum Bowl, Inc., leased a building from Robert and Sena Lanphere and opened a bowling alley. Pursuant to its lease agreement, Cle Elum bought general liability insurance for its business from North Pacific Insurance Company. Cle Elum also promised to remove ice and snow from the building. When the bowling alley roof collapsed due to a heavy accumulation of snow, Mr. Lanphere sued Cle Elum. North Pacific denied coverage under the liability policy and refused to defend against the claim. Cle Elum's suit against North Pacific for coverage was dismissed on summary judgment and it and third party defendant Mr. Lanphere now appeal, contending (1) the collapse of the roof was an "occurrence" triggering liability; (2) an exclusion for rented property is trumped by a provision that provides coverage for claims arising from a contract for the lease of premises; (3) the director of Cle Elum is covered by the policy; and (4) the claim is also covered under personal injury liability (citing Kitsap County v. Allstate Ins. Co., 136 Wash.2d 567, 964 P.2d 1173 (1998)). We affirm the summary judgment.

FACTS
Under the terms of the bowling alley lease entered in May 1993, Cle Elum agreed to carry liability insurance for the premises in amounts of not less than $500,000 per person per occurrence and $1,000,000 for personal injury or death. The Lanpheres were to be named as additional insureds. Cle Elum assumed responsibility under the lease for removing snow and ice from the building, while the Lanpheres agreed to maintain the exterior roof and structural integrity of the building. The lease provided that the Lanpheres would not be liable for any damage sustained by Cle Elum or others due to defects in the premises unless caused by the Lanpheres' own inadvertence or neglect. Finally, each party agreed to indemnify and hold harmless the other from all claims arising out of loss, damage or injury to persons or property resulting from the other's acts of neglect.
Pursuant to the lease agreement, Cle Elum purchased a commercial general liability policy through North Pacific. Under the terms of the policy, North Pacific agreed to pay for the sums Cle Elum becomes legally obligated to pay as damages due to bodily injury or property damage caused by an "occurrence." "Occurrence" is defined by the policy as an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Various exclusions are applicable here. For one, the policy does not cover bodily injury or property damage expected or intended from the standpoint of the insured. It also does not apply to "contractual liability," that is, bodily injury or property damage for which Cle Elum is obligated to pay by reason of a contract, except for liability assumed in an "insured contract." One of the policy's definitions of an insured contract is a "contract for a lease of premises." The policy also excludes coverage for damage to property that is owned, rented or occupied by the insured.
In December 1996, a snowstorm deposited several feet of snow in the Kittitas Valley and the roof of the building leased by Cle Elum collapsed. Mr. Lanphere sued Cle *875 Elum and Francis Tompkins, director, officer and stockholder of Cle Elum, seeking damages for breach of contract and negligence. When North Pacific denied coverage and refused to defend against the lawsuit, Cle Elum filed a petition for declaratory judgment in September 1997. The petition argued North Pacific breached the insurance contract and violated the Consumer Protection Act. North Pacific's answer included a counterclaim and third party complaint alleging the damages were not caused by an "occurrence" and coverage was denied for damages to property rented by the insured. Mr. Lanphere and the Washington insurance broker who procured insurance for Cle Elum were added as third party defendants.
Mr. Lanphere moved for summary judgment to establish policy coverage for the roof's collapse. In response, North Pacific filed a cross-motion for summary judgment, contending the policy did not provide coverage for what was essentially a casualty loss claim. The trial court, treating Cle Elum's motion for declaratory judgment as a motion for summary judgment, issued a memorandum opinion and judgment ruling the policy does not provide coverage for the roof collapse. Summary judgment was entered for North Pacific, dismissing the action with prejudice. This appeal followed.

COMMERCIAL GENERAL LIABILITY
Mr. Lanphere contends the trial court erred in concluding the collapse of the roof is not covered by the North Pacific commercial general liability policy. He assigns error to the court's findings that (1) the collapse of the roof was not an "occurrence" as contemplated in the policy; (2) the exclusion for damage to property rented by the insured controls over a general exception to the exclusion for liability assumed in a lease; and (3) Cle Elum did not assume liability in the lease for damage to the premises.
Where, as here, no facts are in dispute, we review summary judgments regarding insurance coverage de novo. Hillhaven Properties Ltd. v. Sellen Constr. Co., 133 Wash.2d 751, 757, 948 P.2d 796 (1997). The interpretation of an insurance contract is a question of law. Kitsap County, 136 Wash.2d at 575, 964 P.2d 1173. We construe the policy as a whole, giving it a fair and sensible construction that would be understood by the average person. Id.; American Star Ins. Co. v. Grice, 121 Wash.2d 869, 874, 854 P.2d 622 (1993), supplemented by 123 Wash.2d 131, 865 P.2d 507, 44 A.L.R.5th 905 (1994). At the same time, we do not allow an insured's expectations to override the plain language of the contract. Cook v. Evanson, 83 Wash.App. 149, 155, 920 P.2d 1223 (1996), review denied, 131 Wash.2d 1016, 936 P.2d 416 (1997). If the policy language is fairly susceptible to two different interpretations, we attempt to determine the parties' intent by examining extrinsic evidence. American Star, 121 Wash.2d at 874, 854 P.2d 622. Any ambiguity that remains will be construed against the insurer, especially if the ambiguity is in an exclusionary clause that seeks to limit policy coverage. Id. at 874-75, 854 P.2d 622.
North Pacific reserved the "right and duty to defend" any suit seeking damages under its policy. Accordingly, it is obliged to defend any suit alleging facts and circumstances arguably covered by the policy. Kirk v. Mount Airy Ins. Co., 134 Wash.2d 558, 561, 951 P.2d 1124 (1998). If alleged claims clearly are not covered by the policy, however, North Pacific is relieved of its duty to defend. Id.; American Star, 121 Wash.2d at 875, 854 P.2d 622. The questions before us then are whether an average person would have believed the collapse of the roof was a covered "occurrence" and whether the insured would have understood that the policy unambiguously denied coverage for damage to property rented by the insured. Id. Overall, we must keep in mind the aim of a comprehensive general liability policy. Such policies are designed to cover tort liability for injury to third parties and other property, not to provide coverage for the insureds' damages to their own or rented property.
Any analysis begins by noting that terms defined in a policy are interpreted in accordance with that definition. Kitsap County, 136 Wash.2d at 576, 964 P.2d 1173. If undefined, the terms must be given their *876 plain and ordinary meaning. Id. "Occurrence" is defined in the North Pacific policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Accident" is not defined in the policy, but has been defined in previous cases as an "`unintended, sudden, unexpected event[.]'" Queen City Farms, Inc. v. Central Nat'l Ins. Co., 126 Wash.2d 50, 75, 882 P.2d 703, 891 P.2d 718 (1994) (quoting Nancer Ballard & Peter M. Manus, Clearing Muddy Waters: Anatomy of the Comprehensive General Liability Pollution Exclusion, 75 Cornell L.Rev. 610, 623 (1990)). The North Pacific policy specifically excludes bodily injury or property damage "expected or intended from the standpoint of the insured." Whether or not an insured "expected" a particular event is a subjective test, requiring evidence of the insured's state of mind. Queen City Farms, 126 Wash.2d at 69, 882 P.2d 703; City of Redmond v. Hartford Accident & Indem. Ins. Co., 88 Wash. App. 1, 8, 943 P.2d 665 (1997), review denied, 134 Wash.2d 1001, 953 P.2d 96 (1998).
The trial court here decided as a matter of law that the collapse of the roof was not an unexpected, unforeseen or undesigned event and therefore was not an occurrence within the meaning of the policy. Because nothing in the record serves as direct evidence of Cle Elum's state of mind regarding the likelihood that failure to remove the snow would cause the roof to collapse, this is an issue of material fact in dispute. If summary judgment were based only on this finding, reversal and remand for trial would be required. Hillhaven, 133 Wash.2d at 757-58, 948 P.2d 796 (all facts and reasonable inferences must be considered in the light most favorable to the nonmoving party). Whether or not the roof collapse was an "occurrence," however, the fact remains that the damage to the premises was clearly excluded by the policy.
Section I(A)(2)(j)(1) of the policy excludes damage to property "you own, rent, or occupy[.]" This exclusion clearly applies to the destruction of the building leased by Cle Elum, as the corporation admits in its response memorandum to North Pacific's motion for summary judgment. Mr. Lanphere argues an earlier provision contradicts section I(A)(2)(j)(1), raising an ambiguity that defeats summary judgment. The earlier provision, section I(A)(2)(b), excludes property damage the insured is obliged to pay due to a contractual assumption of liability. This exclusion does not apply, however, to liability for damages assumed in a lease or other insured contract. Section I(A)(2)(b)(1). Mr. Lanphere contends Cle Elum was obliged by the lease contract to remove the snow from the roof and to hold him harmless for Cle Elum's negligence. By these terms, he argues, Cle Elum assumed liability for the roof's collapse, and this liability is specifically covered by the policy as an exception to section I(A)(2)(b).
Two facts defeat this argument. First, specific provisions in an insurance contract control over general provisions. Foote v. Viking Ins. Co., 57 Wash.App. 831, 834, 790 P.2d 659 (1990). Section I(A)(2)(j)(1)'s exclusion of damage to property rented by the insured is clear and specific and relates directly to the purpose of a general commercial liability policy: coverage for tort liability to third parties and other property. The specific exclusion of section I(A)(2)(j)(1) is not rendered ambiguous by the general terms of the exclusion in section I(A)(2)(b) or its exception. Foote, 57 Wash.App. at 835, 790 P.2d 659. Second, section I(A)(2)(b) does not apply under these facts. Cle Elum did not assume liability under the lease for damage to the building. As noted by the trial court, Cle Elum was required by the lease to provide liability insurance for no less than $500,000 per person per occurrence and $1,000,000 for personal injury or death. Cle Elum was also required to purchase fire insurance on any improvements made to the premises and for any contents. The lease contemplates no other assumption of liability for damage to the building. Although the lease requires Cle Elum to remove snow from the building, it does not assign liability to Cle Elum for the roof's collapse. On the contrary, Mr. Lanphere retains responsibility for maintaining the building's "structural integrity," including the walls, roof and foundation.
*877 Cle Elum additionally asserts Mr. Tompkinsits director and officeris not subject to the exclusion for property damage caused by the corporation or its employees. This argument is without merit. The policy unambiguously includes officers and directors as insureds with respect to their duties as officers and directors (section II(1)(c)). Cle Elum contends that because the policy excludes lease property damage caused by the corporation or its employees, the silence regarding damage caused by a director indicates the director's actions are not excluded. This interpretation strains the plain meaning of the policy. As an insured director and officer, Mr. Tompkins is subject to the same exclusions that deny coverage to the corporation. Neither Cle Elum nor Mr. Lanphere contends Mr. Tompkins acted outside his corporate authority. Further, nothing in the lease agreement requires Mr. Tompkins to personally remove the snow from the bowling alley roof; therefore, he does not come under the exception to the exclusion for contractual liability (section I(A)(2)(b)(1)).

PERSONAL INJURY LIABILITY
A separate section in the North Pacific commercial general liability policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of `personal injury' or `advertising injury[.]'" This personal injury must be "caused by an offense arising out of [the insured's] business[.]" Personal injury is defined by the policy as "injury, other than `bodily injury', arising" from certain offenses, including "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor[.]" Citing Kitsap County v. Allstate Ins. Co., 136 Wash.2d 567, 964 P.2d 1173 (1998), Mr. Lanphere contends the destruction of his building clearly invaded his right of private occupancy, providing coverage under the policy's personal liability section.
In Kitsap County, several landowners sued Kitsap County for trespass, nuisance and interference with use and enjoyment of their property. They claimed impairment of their health and property due to contaminants and foul odors emanating from a waste disposal site formerly owned by the county. The 19 insurance companies that had issued personal liability policies to the county over a 30-year period declined to indemnify the county for the sums it paid to the plaintiffs in settlement. Kitsap County sought a declaration that the claims of the plaintiffs were for personal injury within the meaning of the policies. As with North Pacific's personal liability policy, the Kitsap County policies defined personal injury as injury (including bodily injury in the Kitsap County policies) arising from the offenses of "`wrongful entry or eviction or other invasion of the right of private occupancy.'" Id. at 573, 964 P.2d 1173. The question before the Washington Supreme Court was "whether the claims against the County for trespass, nuisance, and interference are equivalent to claims for wrongful entry or eviction or other invasion of the right of private occupancy." Id. at 586, 964 P.2d 1173. If so, then the claims were for personal injury and were covered under the policy. Id. The court concluded claims alleging trespass, nuisance and interference constitute personal liability under policies that provide coverage for personal injury arising from wrongful entry or invasion. Id. at 571, 964 P.2d 1173.
Mr. Lanphere contends the collapsed roof "interferes mightily" with his occupancy rights. Accordingly, he argues he suffered personal injury under the personal liability section of the North Pacific policy. He misunderstands a basic tenet of Kitsap County: the theory underlying the claim against the insured, not the nature of the alleged injury, determines whether personal injury coverage or bodily injury and property damage coverage applies. Kitsap County, 136 Wash.2d at 579-80, 964 P.2d 1173. To determine whether personal injury coverage applies, the court must first look to the type of offense alleged. Id. at 580, 964 P.2d 1173. Unlike the claims in Kitsap County, the claims here for breach of contract and negligence are not analogous to claims for the offenses of wrongful entry or invasion of the right of private occupancy. Id. The average purchaser of insurance would not reasonably expect the personal *878 liability provisions to cover a breach of contract and negligence that, as Mr. Lanphere alleged in his complaint, deprived him "of the income generated by his ownership of the building that was destroyed."

CONCLUSION
On balance, the fair and sensible reading of the policy is that it provides liability coverage for bodily injury to third parties and damage to their property. Damage to the premises leased and occupied by Cle Elum, the insured, is not covered by the commercial general liability or the personal injury policies and is in fact explicitly excluded. Accordingly, North Pacific was relieved of its duty to defend and the trial court properly entered summary judgment dismissing the suit. Kirk, 134 Wash.2d at 561, 951 P.2d 1124. Because Cle Elum does not prevail, it is not entitled to the attorney fees that are awarded when an insured assumes the burden of legal action to obtain the benefit of its insurance contract. Findlay v. United Pac. Ins. Co., 129 Wash.2d 368, 380, 917 P.2d 116 (1996).
Affirmed.
SWEENEY, J., and BROWN, J., concur.