[No. 67635-6. En Banc.]

Argued September 21, 1999. Decided April 27, 2000.

KENT FARMS, INC., *Respondent*, v. ZURICH INSURANCE COMPANY, *Petitioner.*

*Jacquelyn A. Beatty* (*Laura Foggan*, of counsel), for petitioner.

*Brian H. Miller*, for respondent.

*John A. Hoglund* (*John A. MacDonald*, of counsel), on behalf of United Policy Holders, amicus curiae.

JOHNSON, J. — This case involves the applicability of an insurance pollution exclusion clause to a claim based on a negligence tort. The Court of Appeals ruled the clause did not apply. We affirm.

## FACTS

In August 1994, Steve Gugenberger delivered diesel fuel to Kent Farms, Inc. (Kent Farms). After filling the farm's fuel storage tank, he closed the tank's intake valve and started to remove the delivery hose. Because of a faulty intake valve, fuel back-flowed over him. He struggled to replace the hose, to stop the potential spill of thousands of

gallons of diesel fuel. Fuel was driven into his eyes, his lungs, and his stomach, causing him significant injury.

Gugenberger filed suit against Kent Farms in Adams County Superior Court. Kent Farms had a commercial farm liability insurance policy underwritten by Zurich Insurance Company (Zurich Insurance) in force at the time. Among other things, the policy provided it would pay "those sums that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies. We will have the right and duty to defend any 'suit' seeking those damages." Clerk's Papers at 10. Kent Farms turned to Zurich Insurance for help. Zurich Insurance refused to pay the claim or defend Kent Farms against the suit on the grounds the coverage was precluded by a pollution exclusion clause in the policy. Kent Farms brought a declaratory action to force Zurich Insurance to defend or pay a settlement. At summary judgment, the trial court found the exception did not apply to exclude coverage.

The Court of Appeals upheld the trial court on the grounds that diesel fuel "is not a pollutant when used as intended" and, thus, was not covered by the clause. *Kent Farms, Inc. v. Zurich Ins. Co.*, 93 Wn. App. 414, 419-20, 969 P.2d 109 (1998). The court also found the clause ambiguous under these facts because it could be read as excluding any injury involving diesel fuel, or only traditional environmental injuries. *Kent Farms*, 93 Wn. App. at 420. Zurich Insurance petitioned this court for review of the Court of Appeals decisions, which we granted.

For the purpose of this appeal, Zurich Insurance agrees the claim is a "bodily injury" as defined by the insurance policy. Therefore, the issue is whether the pollution exclusion clause applies to a claim not based on environmental damage but on personal injury arising from alleged negligence on the part of the insured. Zurich Insurance's pollution exclusion clause reads as follows:

2. Exclusions

 This insurance does not apply to:

. . . .

> c. (1) "Bodily injury" and "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

. . . .

> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Clerk's Papers at 10-11.

## ANALYSIS

 Summary judgment is reviewed de novo, with all inferences taken in favor of the nonmoving party. *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998). It should be granted only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Reid*, 136 Wn.2d at 201. Interpretation of an insurance policy is a matter of law. *American Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874, 854 P.2d 622 (1993), *supplemented on other grounds by* 123 Wn.2d 131, 865 P.2d 507, 44 A.L.R.5TH 905 (1994). Policy language is to be interpreted as the average person would understand it, not in a technical sense. *American Star Ins.*, 121 Wn.2d at 874.

 Here, the underlying injury and cause of action are rooted in negligence, not in environmental harm caused by pollution. The plaintiff alleges negligence in the maintenance and design of a fuel storage facility that resulted in immediate bodily injury when a high-pressure jet of liquid struck him. We must decide whether the fact a pollutant appears in the causal chain triggers application of the exclusion clause. To do this, we must determine the purpose and scope of the exclusion. In *Queen City Farms*, we adopted the analytical approach used in resolving this question. *Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 126 Wn.2d 50, 882 P.2d 703, 891 P.2d 718 (1995). Although the precise

issue in *Queen City Farms* was different from the issue here, the analytical approach is equally applicable. We said:

> [C]onstruction of policy language is for the court and undefined terms should be given their plain, ordinary, and popular meaning in accord with the understanding of the average purchaser of insurance . . . .
>
> The first step is to examine the language of the policies and construe it as a whole. As noted, coverage for pollution caused damage under the [insurance] policies is determined by reference to the primary policies under the [insurance] policies. To decide what is encompassed by the qualified pollution exclusion found in some of the primary policies, we examine the exclusion in context . . . .
>
> . . . .
>
> . . . We are solely concerned with what the qualified pollution exclusion . . . means, and that question is resolved in part by reference to the rest of the language of the primary policies, including the "occurrence" definition which they contain.

*Queen City Farms*, 126 Wn.2d at 74-75 (emphasis added).

██ Put another way, we are required to view the exclusion in light of the whole policy to determine whether, in that context, the exclusion applies. We begin by examining what the exclusion and similar exclusions are intended to accomplish.

The qualified pollution exclusion clause, a precursor to the clause at issue here, came into existence so insurers could avoid the "yawning extent of potential liability arising from the gradual or repeated discharge of hazardous substances into the environment." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 698, 340 S.E.2d 374, 381 (1986). Later, various forms of absolute pollution exclusion clauses, including the clause here, were incorporated into insurance policies in the wake of expanded environmental liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601-9675 (1995) (CERCLA). *See*

*Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 64 Wn. App. 838, 873-84, 827 P.2d 1024 (1992) (surveying the history of the clause). These clauses were clearly intended to exculpate insurance companies from liability for massive environmental cleanups required by CERCLA and similar legislation. *See generally* Jeffrey W. Stempel, *Reason and Pollution: Correctly Construing the "Absolute" Exclusion in Context and in Accord with its Purpose and Party Expectations*, 34 TORT & INS. L.J. 1, 5 (1998). The insurance companies' objective in creating both clauses was to avoid liability for environmental pollution. To read the absolute exclusion clause more broadly ignores the general coverage provisions.

■ This exclusion clause does not deal with the discharge of substances that may also be pollutants directly onto (and into) an individual; rather, this clause specifically addresses those situations in which injury was caused by *environmental damage*. We, therefore, hold the absolute pollution exclusion clause relates to environmental damage, and not to the facts of this case.

Zurich Insurance argues the pollution exclusion clause applies because diesel fuel is a pollutant. However, this reasoning misunderstands the nature of the claim. Gugenberger was not polluted by diesel fuel. It struck him; it engulfed him; it choked him. It did not pollute him. Most importantly, the fuel was not acting as a "pollutant" when it struck him any more than it would have been acting as a "pollutant" if it had been in a barrel that rolled over him, or if it had been lying quietly on the steps waiting to trip him. To adopt Zurich Insurance's interpretation would unjustly broaden the application of the exclusion far beyond its intended purpose.

■ To apply the pollution exclusion clause to the injury in this case would be contrary to this court's previous stance on interpreting exclusion clauses. We have previously held the average purchaser of a comprehensive liability policy reasonably expects broad coverage for liability arising from business operations and "exclusions should be

construed strictly against the insurer." *Queen City Farms*, 126 Wn.2d at 74, 78. Certainly, Kent Farms could reasonably believe from the policy language that acute bodily injury caused by negligently maintained or operated equipment is covered by the policy and beyond the scope of the pollution exclusion clause.

This approach is consistent with that of other courts that have found such pollution exclusion clauses do not apply much beyond traditional environmental torts. The Pennsylvania Superior Court observed that an insurance company's attempt to apply the exclusion to injuries resulting from fumes caused by a clogged flue was simply an opportunistic afterthought, at odds with the original purpose of providing protection to insurance companies from a potentially vast and unforeseen liability for major environmental disasters. *Gamble Farm Inn, Inc. v. Selective Ins. Co.*, 440 Pa. Super. 501, 508, 656 A.2d 142, 145 (1995). ("The pollution exclusion is directed—at least it was initially—at claims involving the pollution of the natural environment."). The New York Court of Appeals held that a similar clause did not apply to injuries arising from the inhalation of asbestos fibers, on the grounds it was ambiguous whether the clause applied to the release of asbestos fibers indoors. *Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 653, 609 N.E.2d 506, 512, 593 N.Y.S.2d 966 (1993).

The results and theories of these cases are consistent with the analytical approach we follow in deciding the scope of the pollution exclusion. The exclusion, when viewed in the context of its purpose, does not apply merely because a potential pollutant was involved in the causal chain. Instead, the exclusion applies to "occurrences" involving the pollutant *as a pollutant*. Our approach is consonant with the understanding of the average purchaser of insurance and consistent with the provisions of the insurance policy as a whole; that is, the pollution exclusion clause was designed to exclude coverage for traditional environmental harms. We will not expand the scope of the exclusion clause beyond its intended purpose.

We affirm the Court of Appeals and hold the pollution exclusion clause does not apply under the facts of this case. Pursuant to *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 52, 811 P.2d 673 (1991), we grant respondent's request for reasonable attorney fees.

GUY, C.J., SMITH, MADSEN, ALEXANDER, TALMADGE, SANDERS, and IRELAND, JJ., and BAKER, J. PRO TEM., concur.