MAR 12 2013


# COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | |
|---|---|
| JANICE COURCHAINE, a single person; and EVA VOSS, a single person, ) ) ) | No. 30020-0-III (consolidated with No. 30021-8-III) |
| Respondents, ) ) | |
| v. ) ) | |
| COMMONWEALTH LAND TITLE INSURANCE COMPANY; and FIDELITY NATIONAL TITLE INSURANCE GROUP, ) ) ) ) | ORDER GRANTING MOTION TO PUBLISH OPINION |
| Appellants, ) ) | |
| SPOKANE COUNTY TITLE, ) ) | |
| Defendant. ) | |

THE COURT has considered a third party's motion to publish the court's opinion

of December 13, 2012, and the record and file herein, and is of the opinion the motion

should be granted. Therefore,

IT IS ORDERED, the motion to publish is granted. The opinion filed by the court

on December 13, 2012 shall be modified on page 1 to designate it is a published

opinion and on page 25 by deletion of the following language:

> A majority of the panel has determined that this opinion will not be
> printed in the Washington Appellate Reports but it will be filed for public
> record pursuant to RCW 2.06.040.

DATED: March 12, 2013
PANEL: Judges Siddoway, Korsmo, Sweeney.
FOR THE COURT:

_____
KEVIN M. KORSMO, Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JANICE COURCHAINE, a single person; | ) | |
| and EVA VOSS, a single person, | ) | No. 30020-0-III |
| | ) | (consolidated with |
| Respondents, | ) | No. 30021-8-III) |
| | ) | |
| v. | ) | |
| | ) | |
| COMMONWEALTH LAND TITLE | ) | |
| INSURANCE COMPANY; and | ) | |
| FIDELITY NATIONAL TITLE | ) | |
| INSURANCE GROUP, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| SPOKANE COUNTY TITLE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Defendant. | ) | |

SIDDOWAY, J. — Janice Courchaine and Eva Voss sued Commonwealth Land

Title Insurance Company and its parent, Fidelity National Title Insurance Group, over an

undisclosed easement burdening property whose title Commonwealth insured.

Courchaine and Voss prevailed at trial. Commonwealth and Fidelity appeal, arguing that

(1) Commonwealth did not breach the title policy and Fidelity has no liability for

coverage; (2) Commonwealth did not breach the Consumer Protection Act (CPA),

chapter 19.86 RCW; and (3) even if Commonwealth did violate the CPA, Fidelity is not separately and additionally chargeable for that violation.

We reverse the trial court's judgment against Fidelity on the policy and against Commonwealth under the CPA but otherwise affirm.

FACTS AND PROCEDURAL BACKGROUND

In September 2008, Janice Courchaine and Eva Voss entered into a purchase and sale agreement for real property located on Cataldo Avenue in Spokane Valley. A single family home existed on the west half of the very large lot and there was room to build a second, adjoining home on the east half, which suited the women's plans to build duplex homes for their families.

Before closing, Courchaine and Voss obtained a preliminary commitment for title insurance from Commonwealth. They reviewed it, considered each of its exceptions, and found nothing that would frustrate their construction plans. Schedule B to the commitment, identifying specific exceptions to coverage, revealed an easement in favor of Modern Electric Company, their utility company. But the easement was consistent with the seller disclosure statement that disclosed a "power company easement" on the property and consistent with the distribution and service lines delivering electricity to the home. Ex. 4. On October 15, 2008, they purchased the property and acquired title by statutory warranty deed.

Shortly after purchasing the property, they learned from a neighbor that the Bonneville Power Administration (BPA) may have an as-yet unused easement across their property, which was confirmed when they attempted to get a building permit and were denied. They learned that construction on the east half of the lot would interfere with a 75-foot easement for transmission lines, in favor of BPA.

The women submitted a claim under their Commonwealth title policy, which did not list the BPA easement as an exception to coverage. Commonwealth originally accepted the claim, acknowledging coverage. But it then reassigned responsibility to Lisa Leick, a claims adjuster for Fidelity, its corporate parent. Leick thereafter notified the women in a four-page letter that their claim was not covered.

Among other reasons offered by Leick for denying the claim was that the recorded plat for the Guthrie's Valley View 4th Addition, by which their lot was created in 1954, disclosed an easement along the eastern half of the lot for BPA transmission lines. The women did not see the 1954 plat before purchasing the property.

Courchaine and Voss commenced the action below in March 2010. A three-day bench trial was conducted a year later. The trial court delivered its oral decision at the conclusion of the evidence, finding that the claim was covered and that both Commonwealth and Fidelity had violated the CPA. Its judgment imposed liability under the insurance policy against both Commonwealth and Fidelity.

Commonwealth and Fidelity timely appealed.

3

No. 30020-0-III; 30021-8-III
*Courchaine v. Commonwealth Land Title Ins. Co.*

ANALYSIS

Commonwealth and Fidelity assign error to the trial court's conclusion that Courchaine's claim was covered by the Commonwealth policy, to its finding of a violation of the CPA against Commonwealth, and to its finding Fidelity separately and additionally liable under the policy and chargeable for the CPA violation. We address their assignments of error to the coverage issue first, and thereafter their assignments of error to the findings of CPA violations. In discussing the parties' positions hereafter, we refer to Courchaine and Voss collectively as Courchaine, for simplicity.

I

Commonwealth was the issuer of the title insurance policy. Its first and second assignments of error essentially challenge the sufficiency of the evidence to establish a breach of its policy. It concedes that many of the facts are undisputed, focusing instead on what it argues are the trial court's unwarranted conclusions of law.

When a trial court enters findings of fact and conclusions of law following a bench trial, review is limited to determining whether substantial evidence supports the findings, and if so, whether the findings support the trial court's conclusions of law and judgment. *Saviano v. Westport Amusements, Inc.*, 144 Wn. App. 72, 78, 180 P.3d 874 (2008). We review only the findings to which appellant assigns error; unchallenged findings are treated as verities on appeal. *Nordstrom Credit, Inc. v. Dep't of Revenue*, 120 Wn.2d 935, 941, 845 P.2d 1331 (1993).

4

No. 30020-0-III; 30021-8-III
*Courchaine v. Commonwealth Land Title Ins. Co.*

Commonwealth has not assigned error to any finding of fact, so our review is limited to determining whether the findings support the trial court's conclusions. *Fenton v. Contemporary Dev. Co.*, 12 Wn. App. 345, 347, 529 P.2d 883 (1974). The interpretation of insurance policies is a question of law that we review de novo. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984).

The trial court's first conclusion of law states:

> 1. The Commitment was a contract for title services between the Plaintiffs and the Defendants. The Defendants' Title policy was a statement of terms and conditions upon which the issuer was willing to issue its title policy. The Commitment failed to except the seventy five (75') foot easement. Therefore, Commonwealth breached the contract with the Plaintiffs. The Plaintiffs' damages based upon breach of contract are $23,500.00.

Clerk's Papers (CP) at 167.

### A. Alleged Error in Finding a "Duty to Except"

Commonwealth first argues that the trial court erred in concluding that the preliminary commitment was a contract for "title services" and that Commonwealth was required by its contract to except all matters of the public record that touched and concerned the land. It argues that this conclusion confuses title insurance with abstracts of title. It points out that title insurance is an indemnity contract and exceptions from coverage are for the benefit of the insurer, not the insured. For that reason, a title insurer is not required to except anything from coverage. Here, Commonwealth is correct.

5

No. 30020-0-III; 30021-8-III
*Courchaine v. Commonwealth Land Title Ins. Co.*

The Washington Supreme Court recognized in *Shotwell v. Transamerica Title Insurance Co.*, 91 Wn.2d 161, 165, 588 P.2d 208 (1978) that a duty to disclose title defects might arise from the combined expectations of a title policy applicant and the service to be performed by title insurance companies. But it declined to decide the issue then, or in three later cases, deciding each case on other grounds. *See Barstad v. Stewart Title Guar. Co.*, 145 Wn.2d 528, 534-35, 39 P.3d 984 (2002) (citing *Shotwell*, 91 Wn.2d 161; *Transamerica Title Ins. Co. v. Johnson*, 103 Wn.2d 409, 693 P.2d 697 (1985); *Klickman v. Title Guar. Co. of Lewis County*, 105 Wn.2d 526, 716 P.2d 840 (1986); *Lombardo v. Pierson*, 121 Wn.2d 577, 852 P.2d 308 (1993)).

Before the court could reach and decide the issue, the legislature acted. In 1997, it amended the insurance code to clarify the distinction between preliminary reports or commitments, on the one hand, and abstracts of title on the other, including to clarify some of the responsibilities associated with each form. LAWS OF 1997, ch. 14, § 1 (adding a new subsection (3) to RCW 48.29.010); *Barstad*, 145 Wn.2d at 536. As a result of the amendment, "title policy" means, by statute, "any written instrument, contract, or guarantee by means of which title insurance liability is assumed." RCW 48.29.010(3)(a).[1] A preliminary commitment "is *not* a representation of the condition of

---

[1] A property purchaser is generally not required by law to obtain title insurance, but a mortgage lender typically requires a borrower to buy title insurance in order to protect the lender's interest in the property. WASH. STATE OFFICE OF THE INS. COMM'R, REPORT OF THE TITLE INSURANCE REVIEW TASK FORCE, TITLE INSURANCE IN

6

title, but a 'statement of terms and conditions upon which the issuer is willing to issue its title policy, if such offer is accepted.'" *Barstad*, 145 Wn.2d at 536 (quoting former RCW 48.29.010(3)(c) (1997)). By contrast, "abstract of title" means

> a written representation, provided under contract, whether written or oral, intended to be relied upon by the person who has contracted for the receipt of this representation, listing all recorded conveyances, instruments, or documents that, under the laws of the state of Washington, impart constructive notice with respect to the chain of title to the real property described.

RCW 48.29.010(3)(b). The definition of "abstract of title" expressly provides that "[a]n abstract of title is not a title policy as defined in this subsection." *Id.*

This 1997 amendment to RCW 48.29.010 "resolve[d] the obligations associated with a preliminary commitment and an abstract of title," and did so in favor of the position of title insurers, who had "'roundly den[ied] they have the abstracter's duty,'" and "'argue[d] that the preliminary commitment merely discloses what the policy will and will not cover, that their only legal obligation is to pay losses under the policy, and that an insured has no reasonable expectation of anything more.'" *Barstad*, 145 Wn.2d at 536, 539 (quoting 18 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 13.18, at 147 (1995)).

---

WASHINGTON: IMPROVING COMPETITION AND CONSUMER CHOICE at 9 (Sept. 2007).

The trial court's challenged conclusion was not that Commonwealth had a duty to *disclose* the easement, but that it had a duty to *except* it.[2] Yet even that is not strictly correct. The duty undertaken by Commonwealth in issuing the title policy was not to except every limitation on title. Its duty was, instead, to indemnify against any limitation on title that it did not except.

While Commonwealth is correct in arguing that Courchaine and the court sometimes relied, in error, on a nonexistent "duty to except," we can look beyond that characterization error to the essence of the complaint, the evidence, and the findings. Breach of the duty to indemnify is the substance of Commonwealth's breach as framed by Courchaine's contract claim, the first claim for relief set forth in the complaint. It is the substance of Commonwealth's breach as testified to by Commonwealth's former employee, Kennard Goodman, whom Courchaine called as a witness and who the trial court found credible and persuasive. Goodman testified:

> Q    So although you could not hire an appraiser [after Fidelity acquired Commonwealth], it was still your professional opinion that [Courchaine's] claim should be accepted, correct?
> A    Yes. That's what my letter said.
> Q    And that is because the Bonneville Power Administration easement, the 75 foot easement, was not disclosed?

---

[2] Commonwealth has argued, in part, from the language of proposed conclusions that the court modified in some respects, in light of Commonwealth's objections. We review whether the findings support the conclusions as entered by the court and disregard Commonwealth's arguments to the extent it relies on findings that were dropped or modified.

A    It was not excepted from the policy and I—all the preliminary commitment does is state these are the terms on which we are willing to give you an insurance policy. So it's not an abstract. And I try to be very strict about that. So it's not a question of disclosure. It's an insurance policy. It's a risk that's insured against and there is no exception for that risk.

Q    And there should have been an exception for that risk, in your opinion?

A    *If the title company didn't want to cover the loss resulting from that risk, yes*, there should have been a separate exception for it.

Report of Proceedings (RP) (Mar. 7, 2011) at 18-19 (emphasis added). It was a gist of the trial court's oral decision, which it incorporated by reference into its findings and conclusions. In its oral decision, the court stated, in part:

*I cannot believe that they in good faith knew at that point or believed at that point they didn't have a valid claim, that the plaintiff didn't have a valid claim. It seems so apparent that the plaintiff had a valid claim and* yet they did play a shell game.

RP (Mar. 10, 2011) at 239 (emphasis added).

On appeal, "'[w]e may affirm the [lower] court on any grounds established by the pleadings and supported by the record.'" *In re Marriage of Rideout*, 150 Wn.2d 337, 358, 77 P.3d 1174 (2003) (alterations in original) (quoting *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 766, 58 P.3d 276 (2002)). Commonwealth had no duty to except the BPA easement. But it did have a duty to indemnify Courchaine against any actual loss on account of the BPA easement if it did not except it.

9

Courchaine made a claim and demonstrated actual loss. Given the pleadings, the evidence, and the gist of the trial court's decision, judgment on the policy can be affirmed if the record supports Commonwealth's breach of a contractual duty to indemnify.

### B. Alleged Exclusion by Description of Covered Land

Commonwealth contends that the trial court made a further error in finding in Courchaine's favor on the coverage issue, however. It argues that the lot purchased by Courchaine was created by a plat, the title that it insured was defined in terms of the plat, any restrictions or easements identified on the plat were thereby part of the legal description of the property, and the BPA easement was reflected on the plat map. With the insured title already subject to any limitations notated on the plat, it argues, it needed to except only matters *not* disclosed by the plat. It makes a related argument that its title commitment and policy excepted coverage for "restrictions" shown on the plat.

The standard offer made by Commonwealth's commitment for title insurance was set forth in the preprinted terms of its policy cover, which stated Commonwealth's commitment to issue a policy of title insurance in favor of the proposed insured as owner or mortgagee

> of the estate or interest covered hereby in the land described or referred to in Schedule A, upon payment of the premiums and charges therefor; all subject to the exceptions and conditions and stipulations shown herein, the Exclusions from Coverage, the Schedule B exceptions, and the conditions and stipulations of the policy or policies requested.

CP at 33.

Schedule A provided that the estate or interest in the land described was "FEE SIMPLE" and described the land as:

> Lot 11, Block 1, GUTHRIE'S VALLEY VIEW 4TH ADDITION, as per plat recorded in Volume 3 of Plats, page 62, records of Spokane County.

CP at 36, 37.

The policy that Commonwealth offered to issue, and ultimately did issue, insured Courchaine against actual loss resulting from "COVERED RISKS" set forth in the policy. CP at 46. Among the covered risks were that "[s]omeone else has an easement on the Land." *Id.* (Covered Risk 4). Courchaine was therefore insured against actual loss resulting from the BPA easement unless (1) coverage was limited by her title, which was already limited by that easement, or (2) the easement was addressed in an exception, condition, stipulation, or exclusion.

Commonwealth's argument that Courchaine's coverage was confined to the limits of her title is readily addressed. In *Shotwell*, the conveyance to the insured had concluded its description of the land conveyed with the language, "'EXCEPT right of way for existing roads.'" 91 Wn.2d at 163 (emphasis omitted). The insured's title policy described the land with identical language. The title insurer argued that inasmuch as the language of the conveyance effectively excluded an existing but as-yet-unused road easement, then the identical language, incorporated in its policy, must be sufficient to exclude the same easement from coverage. The court disagreed, holding that "[i]n

11

construing a policy of insurance the rules of conveyancing do not necessarily apply." 91 Wn.2d at 170.

In arriving at its holding, the *Shotwell* court cited, with approval, a Texas decision rejecting an argument that is on all fours with Commonwealth's argument here. In *San Jacinto Title Guaranty Co. v. Lemmon*, 417 S.W.2d 429, 431 (Tex. App. 1967), the title insurer argued that because it described the insured land as a numbered lot, "'as shown by the map or plat Thereof now of record . . . to which reference is here made for all pertinent purposes,'" then an easement for a waterline identified on the recorded plat was excluded from the terms of the policy without the need for a specific exception. The Texas court rejected the argument. Our Supreme Court, in *Shotwell*, quoted and adopted its reasoning:

> "Unquestionably, the reference in the warranty deed to the recorded map or plat contemplated the purposes of the deed. *The description of the land in the policy was for the purpose of identifying the land covered by the policy and not, as appellant contends, for the purpose of limiting the insurance protection purchased.* In our opinion, this was the clear and unambiguous meaning of the policy. To hold otherwise would, in effect, require appellees, who have purchased title insurance, to be their own insurer in so far as their title to the land, in the respect here under consideration, is concerned. Such a result would not be in keeping with the principal purpose of the policy . . . ."

*Shotwell*, 91 Wn.2d at 169-70 (quoting *Lemmon*, 417 S.W.2d at 431-32); *cf. Denny's Restaurants, Inc. v. Sec. Union Title Ins. Co.*, 71 Wn. App. 194, 859 P.2d 619 (1993) (finding coverage even where the land covered by the insured's claim was clearly

excluded by the policy's description of land, because other provisions of the policy reasonably implied coverage).

There is an additional reason why this argument fails in light of the terms of Commonwealth's policy. Its commitment states that the estate or interest it offers to insure is "fee simple," in land it proceeds to describe. A party who has a "fee simple" interest or estate holds her interest free of easements. *See Wingard v. Copeland*, 64 Wash. 214, 218, 116 P. 670 (1911) (appellant was unable to convey full fee simple title where his land was subject to an easement). Commonwealth's argument that the land described by its policy was already subject to the BPA easement is irreconcilable with its offer to insure a fee simple estate or interest in that land, subject only to the exceptions, conditions, stipulations, and exclusions provided by the policy.

## C. Alleged Exception as a Restriction

Commonwealth must therefore identify an exception, condition, stipulation, or exclusion that prevents the BPA easement from falling within the scope of the policy's coverage. It relies on only the following exception, included in Schedule B to the commitment and policy:

> RESTRICTIONS contained on the face of [the Guthrie's Valley View] plat, but omitting any covenants or restrictions, if any, based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law.

13

CP at 39.

Courchaine argues that the trial court's findings adopt trial testimony from Commonwealth's former employee, Goodman, that easement and restriction are "two different terms of art" and that "there is a difference between restrictions as noted in schedule B # 7 of the preliminary title report and easements." CP at 164, 166 (Findings of Fact 16, 25). Commonwealth has not assigned error to these two findings, which are verities on appeal.

Even if we examine the meaning of "restriction" as an issue of insurance policy construction and therefore an issue of law, Commonwealth's position is not persuasive. "Restriction" is not defined by either the commitment or the policy. If there were no policy, its meaning in the commitment might be ambiguous. But the policy treats easements and restrictions as separate and distinct. "Easement" *is* defined by the policy, to mean "the right of someone else to use the Land for a special purpose." CP at 50.

"Restriction," on the other hand, is used in the policy to refer to a rule or condition for the owner's use of the land. The policy treats "restrictions" as things that can be violated or enforced. One of the covered risks under the policy is:

> Your Title is lost or taken because of a violation of *any . . . restriction,* which occurred before You acquired Your Title, even if the covenant, condition or *restriction* is excepted in Schedule B.

CP at 46 (Covered Risk 13) (emphasis added). Another is:

14

> Someone else tries to enforce *a* discriminatory . . . *restriction* that they
> claim affects Your Title which is based upon race, color, religion, sex,
> handicap, familial status, or national origin.

*Id.* (Covered Risk 23) (emphasis added).

Easements are addressed separately, as presenting distinct risks. Consistent with the policy's definition, "easement" is used to refer to rights of other parties. Reference to easements appears first in the covered risk triggering coverage in this case:

> Someone else has an easement on the Land.

*Id.* (Covered Risk 4). Elsewhere, easements present a covered risk if:

> You are forced to remove Your existing structures because they encroach
> onto an easement or over a building set-back line, even if the easement or
> building set-back line is excepted in Schedule B.
>
> Your existing structures are damaged because of the exercise of a right to
> maintain or use any easement affecting the Land, even if the easement is
> excepted in Schedule B.

*Id.* (Covered Risks 20, 21).

Interpretation of insurance policies is a question of law; the policy is construed as a whole with the court giving force and effect to each clause in the policy. *Am. Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874, 854 P.2d 622 (1993). The language of an insurance policy is to be interpreted in accordance with the way it would be understood by the average person, rather than in a technical sense. *Id.* (citing *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 881, 784 P.2d 507 (1990)). If policy language is clear and unambiguous, the court may not modify the contract or create an ambiguity. *Id.*

15

We find no ambiguity. A "restriction," as that term is used in Commonwealth's commitment and policy, is fundamentally different from an easement. Given its meaning, it cannot be understood to include easements. And if we were to find an ambiguity, well-settled principles of insurance policy construction would require us to give the commitment and policy a meaning and construction favorable to the insured. *Bordeaux, Inc. v. Am. Safety Ins. Co.*, 145 Wn. App. 687, 694, 186 P.3d 1188 (2008). Coverage exclusions "are contrary to the fundamental protective purpose of insurance," "will not be extended beyond their clear and unequivocal meaning," and "should also be strictly construed against the insurer." *Stuart v. Am. States Ins. Co.*, 134 Wn.2d 814, 818-19, 953 P.2d 462 (1998).

Because Commonwealth's policy did not exclude or except the BPA easement, it breached its duty to indemnify Courchaine when it failed to compensate her loss. The trial court correctly found in her favor in light of her breach of contract claim.

D. Liability of Fidelity for the Policy

The trial court also imposed liability on Fidelity to indemnify Courchaine against loss under the policy. Fidelity assigns error to that part of Courchaine's judgment, pointing out that Courchaine presented no evidence or argument as to a basis on which it could be liable for the policy it did not issue. Courchaine provides no rationale for Fidelity's liability in her response.

16

To the extent that the judgment imposes liability against Fidelity under the policy, it appears inconsistent with the court's conclusions of law, which state, "The Commitment failed to except the seventy five (75') foot easement. Therefore, Commonwealth breached the contract with the Plaintiffs. The Plaintiffs' damages based upon breach of contract are $23,500.00." CP at 167. There being no evidence of a basis for Fidelity's liability for Commonwealth's policy, that portion of the judgment against it must be reversed.

## II

Commonwealth and Fidelity also challenge the trial court's conclusions that they violated the CPA. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful" and provides for a private right of action. RCW 19.86.020, .090. To prevail on a CPA claim alleging an unfair or deceptive act or practice, the plaintiff must establish that (1) the defendant has engaged in an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) the plaintiff has suffered injury in his or her business or property, and (5) a causal link exists between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Commonwealth and Fidelity challenge the sufficiency of the evidence to support an unfair or deceptive act or practice that impacts the public interest.

17

The public interest impact element may be satisfied per se, by showing that a statute has been violated that contains a specific legislative declaration of public interest impact. *Id.* at 791. In RCW 48.01.030 the legislature has provided that "[t]he business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." *See Salois v. Mut. of Omaha Ins. Co.*, 90 Wn.2d 355, 359 & n.1, 581 P.2d 1349 (1978). The public interest impact element is therefore satisfied per se.

An unfair trade practice may also be established per se, by showing that the defendant has engaged in an act or practice that the legislature has declared to constitute an unfair or deceptive act in trade or commerce. *Hangman Ridge*, 105 Wn.2d at 786. In addition, and because the CPA expressly applies to "actions and transactions prohibited *or regulated* under the laws administered by the insurance commissioner," an unfair trade practice may be established per se by showing that it has been declared an unfair practice in regulations adopted by the insurance commissioner. RCW 19.86.170 (emphasis added); *Indus. Indem. Co. of the Nw., Inc. v. Kallevig*, 114 Wn.2d 907, 920, 792 P.2d 520 (1990). The insurance commissioner has declared a number of claims settlement practices unfair or deceptive in WAC 284-30-330. The trial court's findings do not include a finding of a per se unfair trade practice.

Where a plaintiff cannot point to a statute or regulation declaring an act or practice unfair or deceptive, she may still independently demonstrate that the practice is unfair or

18

deceptive by showing that the practice has the capacity to deceive a substantial portion of the public. *Hangman Ridge*, 105 Wn.2d at 785. While the CPA does not define the term "deceptive" the court has held that "implicit in that term is 'the understanding that the actor *misrepresented* something of material importance.'" *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 166, 159 P.3d 10 (2007) (quoting *Hiner v. Bridgestone/Firestone, Inc.*, 91 Wn. App. 722, 730, 959 P.2d 1158 (1998), *rev'd in part on other grounds*, 138 Wn.2d 248, 264, 978 P.2d 505 (1999)), *aff'd sub nom. Pang v. Farmers Ins. Co.*, 166 Wn.2d 27, 204 P.3d 885 (2009).

The trial court's second and third conclusions of law identified the following acts or practices that it concluded violated the CPA:

> 2. Defendant Commonwealth violated the [CPA] by unfair or deceptive acts or practices, namely failing to include and except in the title insurance policy the easement filed of record in September of 1945, under recording number 666726A . . . . Commonwealth also failed to issue the final title policy for six (6) months. When they finally issued the final policy in April of 2009, it was back dated to October 17, 2008.
> 3. Defendant Fidelity failed to pay the Plaintiffs' claim when said failure to except the BPA easement was brought to Fidelity's attention. Further, both Defendants misled the Plaintiffs into believing that they were two separate legal entities acting independent of one another.

CP at 167-68.

A. Commonwealth's Liability Under the CPA

We first address Commonwealth's liability under the CPA. In concluding that Commonwealth was liable for trebled damages, attorney fees, and costs under the CPA,

the trial court relied upon (1) Commonwealth's failure to identify the BPA easement as an exception to coverage in its commitment and policy; (2) its failure to issue the final, back-dated title policy for six months; and (3) along with Fidelity, its misleading Courchaine into believing that the two companies were separate legal entities acting independent of one another.

As already addressed, Commonwealth had no duty to identify the BPA easement as an exception to coverage in its commitment and policy. Given the clear language of RCW 48.29.010(3)(c) that a preliminary commitment "is not a representation as to the condition of the title," Commonwealth's nondisclosure of the BPA easement cannot be considered unfair or deceptive.

As to the delay in issuing the title policy, the trial court does not address in its findings how or why the delay in issuing or transmitting the policy was unfair or deceptive. The trial court's oral decision, incorporated in the findings, reveals only speculation that the delay in receipt of the policy might have been to create obstacles or inconvenience for the insured.[3] Review of the record reveals that the only testimony addressing the delay noted the fact of the delay, but without indicating that it presented any problem.

---

[3] The trial court stated in its oral decision:
[T]wo months later comes [a]n e-mail on March 24 of '09 from someone who says all of a sudden "I'm the new claims adjuster. You're dealing with me, and by the way, you get me Commonwealth's information and give it to me," which is a total mystery. Was that meant to deceive or infer to the plaintiff that Fidelity was not affiliated with Commonwealth because they

20

Finally, the trial court's conclusion that Commonwealth violated the CPA on account of confusion created as to the relationship between Commonwealth and Fidelity relies on findings that upon assuming responsibility for the claim, Lisa Leick, acting for Fidelity, corresponded with Courchaine and first asked Courchaine to provide materials from Commonwealth, later stating that the claim submitted to Commonwealth "'is now handled by Fidelity.'" CP at 166 (Findings of Fact 27, 30). The trial court also found that

> 28. Janice Courchaine and [her mother] believed they were working with a separate entity regarding the claim.
> 29. Although Commonwealth is a subsidiary of Fidelity, they acted in such a manner that it was reasonable for the Plaintiffs to believe they were separate, unrelated entities.
> . . . .
> 31. [The newly-assigned adjuster], an employee and agent of Fidelity, led Janice Courchaine to believe that Fidelity . . . was not affiliated with Commonwealth or Spokane County Title.
> . . . .
> 34. The Defendants played a shell game with the Plaintiffs by . . . delay[ ] and obfuscation regarding who the Plaintiffs were dealing with.

CP 166-67.

The record reveals that Commonwealth is a subsidiary of Chicago Title Insurance Company, which is a subsidiary of Chicago Title and Trust Company, which is a subsidiary of Fidelity. They are reportedly separate companies, with separate operations,

---

couldn't get records from Commonwealth, the client had to? Or was it to create a hoop and a delay for the plaintiff. It's just really unclear to me. RP (Mar. 10, 2011) at 236.

21

and generally *do* act independently of each other. Evidently they use a common claims processing center for handling insurance claims.

The trial court did not find that the representations about the two companies' independent operations were false, and apparently they were not. The findings do not support a violation of the CPA.

The findings are insufficient to support the conclusion that Commonwealth is liable for a violation of the CPA.

## B. Fidelity's Liability

In concluding that Fidelity was separately liable for violating the CPA, the trial court relied on (1) its failure to accept the claim and pay the loss once it assumed the claim adjustment responsibility, and (2) along with Commonwealth, misleading Courchaine into believing the companies were separate legal entities acting independently. We have already addressed the insufficiency of the findings to sustain the second basis for CPA liability.

As a threshold matter, Fidelity argues that any CPA liability on its part must rely on a theory of vicarious liability or corporate disregard, because it had no direct involvement in the handling of the claim. Yet most of the claim handling evidence admitted at trial supports direct involvement by Fidelity. Two pieces of electronic mail admitted at trial were from Leick, who identified herself in those communications as "Claims Administrator, Fidelity National Title Group." Ex. 16. In corresponding with

Courchaine, Leick stated that the claim Courchaine submitted to Commonwealth is "now being handled by Fidelity National Title." *Id.* Leick also indicated that she did not have access to the Commonwealth paperwork and requested that Courchaine mail it to her. *Id.* Ample evidence supported a finding by the trial court that denial of the claim, if an unfair trade practice, was the responsibility of Fidelity.

The criteria for deciding whether an insurer is liable for bad faith failure to pay a claim are well settled. An insurer's denial of coverage without reasonable justification constitutes an unfair act under the CPA. *Kallevig*, 114 Wn.2d at 917. "[R]efusal must be based upon reasonable grounds." *Safeco Ins. Co. of Am. v. JMG Restaurants, Inc.*, 37 Wn. App. 1, 15, 680 P.2d 409 (1984). However, if a denial of coverage is incorrect but based on reasonable conduct of the insurer, it does not constitute an unfair trade practice. *Villella v. Pub. Emps. Mut. Ins. Co.*, 106 Wn.2d 806, 821, 725 P.2d 957 (1986). Acts performed in good faith under an arguable interpretation of existing law do not constitute unfair conduct that violates the consumer protection law. *Perry v. Island Savs. & Loan Ass'n*, 101 Wn.2d 795, 810, 684 P.2d 1281 (1984). The question of whether a particular action gives rise to a CPA violation is a question of law. *Seattle Pump Co. v. Traders & Gen. Ins. Co.*, 93 Wn. App. 743, 752, 970 P.2d 361 (1999).

The trial court found that Fidelity acted in bad faith when it failed to abide by Kennard Goodman's initial assessment and cover the claim. The court credited Goodman's testimony, as Courchaine's witness, that Leick's explanation of Fidelity's

basis for denial was "horrible," and that if he "was teaching a class and [her letter] was the final exam, [he] would give her a D or F." RP (Mar. 7, 2011) at 24, 40.

The trial court found that "Fidelity knew that the Plaintiffs had a valid claim." CP at 167 (Finding of Fact 33). It found that the actions by Fidelity were "frivolous and unfounded" and there was "no reasonable justification for denying the claim and a good faith mistake was not made." *Id.* Fidelity has not assigned error to these findings.

The fact that an insurer reexamines its coverage position and rejects a claim after first accepting it is not, standing alone, insurance bad faith. But here, Fidelity does not even attempt to defend several of the bases for denying the claim identified by Leick's letter denying coverage. And the two arguments that it offers in support of denying coverage fail in light of existing law and the plain terms of its policy, as discussed in section I.B and C, *supra*. Substantial evidence supports the trial court's finding of a bad faith denial of the claim.

## III

Courchaine seeks attorney fees and costs on appeal as the prevailing party under the CPA. RCW 19.86.090. Commonwealth and Fidelity assert that the award of attorney fees based on RCW 19.86.090 was erroneous and must be reversed because there was no violation of the CPA.

The findings do not support Commonwealth's violation of the CPA, so the trial court's award of attorney fees and costs against it is reversed.

24

Where a statute or contract allows an award of attorney fees at trial, an appellate court has authority to award fees on appeal. *Standing Rock Homeowners Ass'n v. Misich*, 106 Wn. App. 231, 247, 23 P.3d 520 (2001). The CPA provides a basis for an award of attorney fees for those portions of the appeal related to the CPA claim against Fidelity. Because the trial court will need to revisit the amount of attorney fees and costs awarded Courchaine for proceedings in the trial court, we direct that the amount of fees and costs on appeal be determined by the trial court at the same time. RAP 18.1(i).

We reverse judgment against Commonwealth on the CPA claim, reverse judgment against Fidelity on the contract claim, and otherwise affirm. We award attorney fees and costs of appeal against Fidelity, and remand for proceedings consistent with this opinion.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, C.J.

Sweeney, J.

25